IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| MONSTER INVESTMENTS, INC.<br>6026 Swanson Creek Lane<br>Hughesville, Maryland 20637, | CASE NO. |
| and | |
| KLAR INC.<br>6026 Swanson Creek Lane<br>Hughesville, Maryland 20637, | JUDGE |
| and | |
| LORRESSA DAWN ROBINSON<br>6026 Swanson Creek Lane<br>Hughesville, Maryland 20637, | |
| and | |
| DONALD I. BERNARD<br>6024 Swanson Creek Lane<br>Hughesville, Maryland 20637, | **<u>VERIFIED COMPLAINT FOR</u>**<br>**<u>MONEY DAMAGES AND</u>**<br>**<u>EQUITABLE RELIEF</u>** |
| and | <u>(Jury Demand Endorsed Hereon)</u> |
| CLINTON FENCE CO., INC.<br>2630 Old Washington Road<br>Waldorf, Maryland 20601, | |
| and | |
| L.D. JAY, INC.<br>6026 Swanson Creek Lane<br>Hughesville, Maryland 20637, | |
| and | |
| J. ADAMS PROPERTIES LLC<br>2630 Old Washington Road<br>Waldorf, Maryland 20601, | |
| and | |

1

J. ADAMS LIVING TRUST DATED
    JANUARY 8, 2008
        Wendy S. King, Successor Trustee
2630 Old Washington Road
Waldorf, Maryland 20601,

    and

ESTATE OF WESLEY J. ADAMS
c/o Renee Ketter, Executrix
6704 Surratts Road
Clinton, Maryland 20735,

                Plaintiffs,

    vs.

AVANCE TITLE, LLC
8100 Boone Boulevard, Suite 330
Vienna, Virginia 22182
        In care of:
        Incorp Services, Inc., Registered Agent
        7288 Hanover Green Drive
        Mechanicsville, Virginia 23111,

    and

SOLEDAD HERRERA
916 Ducharme Road
Marshfield, Vermont 05658,

    and

ARTURO VASQUEZ
916 Ducharme Road
Marshfield, Vermont 05658,

    and

SCOTT R. DAVIS
1454 Hollow Wood Lane
Avon, Ohio 44011-1090,

    and

STEWART TITLE COMPANY
1360 Post Oak Boulevard, Suite 100
Houston, Texas 77056

In care of:
CT Corporation, Registered Agent
2405 York Road, Suite 201
Timonium, Maryland 21093-2264,

and

STEWART TITLE GUARANTY COMPANY,
    INC.
1360 Post Oak Boulevard, Suite 100
Houston, Texas 77056
    In care of:
    CT Corporation, Registered Agent
    2405 York Road, Suite 201
    Timonium, Maryland 21093-2264,

and

STEWART INFORMATION SERVICES
    CORPORATION
1360 Post Oak Boulevard, Suite 100
Houston, Texas 77056,

and

DOMA TITLE INSURANCE, INC.
760 NW 107th Avenue, Suite 401
Miami, Florida 33172,

and

DOMA HOLDINGS, INC.
101 Mission Street, Suite 1050
San Francisco, California 94105,

                Defendants.

---

Plaintiffs, Monster Investments, Inc. ("Monster"), Klar Inc. ("Klar"), Lorressa Dawn Robinson ("Robinson"), Donald I. Bernard ("Bernard"), Clinton Fence Co., Inc. ("Clinton Fence"), L.D. Jay, Inc. ("LDJ"), J. Adams Properties LLC ("Adams Properties"), J. Adams Living Trust dated January 8, 2008 (the "Trust"), and the Estate of Wesley J. Adams (the "Estate"), for their Complaint alleging claims for breach of contract, breach of fiduciary duties, fraud, fraudulent

inducement, conversion, negligence, negligent misrepresentation, civil conspiracy, promissory estoppel and RICO violations, and seeking compensatory, treble and punitive damages, along with forfeiture, attachment and other equitable relief, against Defendants, Avance Title, LLC ("Avance"), Soledad Herrera ("Herrera"), Arturo Vasquez ("Vasquez"), Scott Davis ("Davis"), Stewart Title Company ("Stewart Title"), Stewart Title Guaranty Company, Inc. ("Stewart Guaranty"), Stewart Information Services Corporation ("Stewart Information"), Doma Title Insurance Company f/k/a North American Title Insurance Company ("Doma Title"), and Doma Holdings, Inc. ("Doma Holdings"), and each of them, jointly and severally, as the case may be, hereby claims, alleges, states and avers as follows:

<u>**NATURE OF ACTION, JURISDICTION AND VENUE**</u>

1.      This is an action brought under the Court's diversity jurisdiction asserting state common law claims for breach of contract, breach of fiduciary duties, fraud, fraudulent inducement, conversion, negligence, negligent misrepresentation, civil conspiracy, and promissory estoppel, seeking compensatory and punitive damages.

2.      This Court has diversity jurisdiction over the subject-matter of the foregoing state law claims, pursuant to the provisions of 28 U.S.C. § 1332(a)(1), because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.  Plaintiffs are all citizens of Maryland whereas Defendants are, respectively, citizens of Virginia, Ohio, Texas or Delaware.

3.      This is also an action for compensatory, treble and punitive damages, and for forfeiture, attachment and other equitable relief, brought by persons injured in their business or property, pursuant to 18 U.S.C. § 1964(c), against Herrera, Vasquez and Avance for their fraudulent conduct, arising under the provisions of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-68.

4.     This Court has subject-matter jurisdiction over the federal questions presented by this controversy pursuant to the provisions of 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).

5.     This Court also has pendent and ancillary jurisdiction over the state law claims alleged in this Complaint as well as supplemental jurisdiction, pursuant to the provisions of 28 U.S.C. § 1367, because such state law claims are so related to the federal-question claims presented herein that they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court has personal jurisdiction over each Defendant because each has initiated business contacts and dealings with persons in the State of Maryland sufficient to constitute having minimum contacts with Maryland for purposes of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

7.     This Court also has personal jurisdiction over each Defendant under the Maryland long-arm statute, MD. COURTS JUD. PRO. CODE ANN. § 6-103(b), with respect to Plaintiffs' claims arising therefrom, because each Defendant has, directly or by an agent, transacted business or performed work or services in Maryland, contracted to supply services in Maryland, caused tortious injury in Maryland by acts or omissions committed in Maryland, caused tortious injury in Maryland or outside of Maryland by acts or omissions committed outside of Maryland in light of each Defendant's regular business activities or regular solicitations of business in Maryland, and/or engaged in other persistent courses of conduct in Maryland or derived substantial revenue from services used or consumed in Maryland.

8.     Venue is properly laid in this judicial district, pursuant to the provisions of 28 U.S.C. § 1391(b)(2), because it is the judicial district within which a substantial part of the events giving rise to the claims for relief occurred, including without limitation the financial impact of Defendants' wrongful conduct and Plaintiffs' receipt of materially false and misleading statements

and information.

## THE PARTIES

9.      Monster is a Maryland corporation having its principal place of business in Hughesville, Charles County, Maryland.  At various times material to this Complaint, Monster owned many of the real properties that are the subjects of the claims alleged in this Complaint.

10.      Klar is a Maryland corporation having its principal place of business in Hughesville, Charles County, Maryland.  At certain times material to this Complaint, Klar owned many of the real properties that are the subjects of the claims alleged in this Complaint.

11.      Robinson is an individual residing in Hughesville, Charles County, Maryland.  At all times material to this Complaint, Robinson was an investor in numerous real properties located in Maryland, either jointly with her business partner, Wesley J. Adams, until his death in August 2020, or individually before and after his death.  Robinson is currently the sole shareholder, director and officer of Monster, Klar and LDJ.  She is Bernard's daughter.  At all times material to this Complaint, the companies of which Robinson was a shareholder owned many of the real properties that are the subjects of the claims alleged in this Complaint.

12.      Bernard is an individual residing in Hughesville, Charles County, Maryland.  At certain times material to this Complaint, Bernard was a shareholder, director and officer of Monster and Klar.  Bernard is Robinson's father.  At various times material to this Complaint, the companies of which Bernard was a shareholder owned some of the real properties that are the subjects of the claims alleged in this Complaint.

13.      Clinton Fence is a Maryland corporation having its principal place of business in Waldorf, Charles County, Maryland.  The late Wesley J. Adams ran Clinton Fence from its inception in the 1950s until his death in August 2020, and was its sole shareholder at the time of his death.  At his death, his Estate became the sole shareholder of Clinton Fence and remained the

sole shareholder until it sold all shares of the company in 2023.  Robinson is currently President and CEO of Clinton Fence.

14.     LDJ is a Maryland corporation having its principal place of business in Waldorf, Charles County, Maryland.  Both the late Wesley J. Adams and his business partner, Robinson, were shareholders of LDJ from its inception until Spring 2019 when Mr. Adams sold all of his shares to Robinson.  With the exception of a six-month period in 2020 during which there was another shareholder of LDJ, Robinson has been the sole shareholder, director and officer of LDJ since the stock sale in Spring 2019.  At various times material to this Complaint, LDJ owned many of the real properties that are the subjects of the claims alleged in this Complaint.

15.     Adams Properties is a limited liability company organized under the laws of the State of Maryland and having a principal place of business in Waldorf, Charles County, Maryland. The late Wesley J. Adams was the sole member of Adams Properties at the time of his death in August 2020.  After his death, his Estate has been the sole member of Adams Properties.  At various times material to this Complaint, Adams Properties owned many of the real properties that are the subjects of the claims alleged in this Complaint.

16.     The Trust is a revocable living trust formed and settled under Maryland law by the late Wesley J. Adams on or about January 8, 2008.  After Mr. Adams' death in August 2020, his daughter Wendy S. King has served as successor Trustee of the Trust.  At various times material to this Complaint, the Trust owned many of the real properties that are the subjects of the claims alleged in this Complaint.

17.     The Estate is the Estate of Wesley J. Adams who died on August 7, 2020.  The Estate remains open for the benefit of Mr. Adams' heirs and beneficiaries in the Orphans Court for Charles County, Maryland, Estate No. 000000023615.  The executrix and fiduciary for the Estate is Mr. Adams' daughter, Renee Ketter, who resides in Clinton, Prince George's County,

Maryland. For purposes of the claims alleged in this Complaint, the Estate stands in the shoes of Mr. Adams and asserts the claims he would be entitled to assert if he were still alive. At various times material to this Complaint, Mr. Adams (and now the Estate) owned many of the real properties that are the subjects of the claims alleged in this Complaint.

18.    Avance is a Virginia corporation having its principal place of business in Vienna, Virginia. Avance is a business entity that was registered and authorized to do business in Maryland from April 2017 until its registration was forfeited in November 2023. Since in or about 2018, or before, and continuing since that time, Avance has persistently and regularly done, solicited and/or transacted business in Maryland, has persistently and regularly received and handled substantial sums of money ostensibly to be placed and held in escrow from transactions involving real properties located in Maryland, has persistently and regularly charged and received substantial fees for services it ostensibly rendered in connection with transactions involving real properties located in Maryland, and has engaged in a persistent and regular course of conduct in Maryland, by means of placing and receiving numerous interstate wire communications (telephone, facsimile and electronic mail), and by sending and receiving numerous other written communications through the United States mails, to and from Plaintiffs and others in Maryland, and in other ways and means.

19.    Herrera is an individual residing in Marshfield, Vermont. At all times material to this Complaint, Herrera was an owner, member, principal, officer, and/or employee of Avance. Herrera is also Vasquez's wife. Since in or about 2018, or before, and continuing since that time, Herrera has persistently and regularly done, solicited and/or transacted business in Maryland, has persistently and regularly received and handled substantial sums of money ostensibly to be placed and held in escrow from transactions involving real properties located in Maryland, has persistently and regularly charged and received substantial fees for services it ostensibly rendered

in connection with transactions involving real properties located in Maryland, and has engaged in a persistent and regular course of conduct in Maryland, by means of placing and receiving numerous interstate wire communications (telephone, facsimile and electronic mail), and by sending and receiving numerous other written communications through the United States mails, to and from Plaintiffs and others in Maryland, and in other ways and means. Herrera served as the escrow agent/officer for numerous transactions involving real properties Plaintiffs owned, purchased and/or sold in Maryland.

20.     Vasquez is an individual residing in Marshfield, Vermont. At all times material to this Complaint, Vasquez was s an owner, member, principal, officer and/or employee of Avance. Vasquez is also Herrera's husband. Since in or about 2018, or before, and continuing since that time, Vasquez has persistently and regularly done, solicited and/or transacted business in Maryland, has persistently and regularly received and handled substantial sums of money ostensibly to be placed and held in escrow from transactions involving real properties located in Maryland, has persistently and regularly charged and received substantial fees for services it ostensibly rendered in connection with transactions involving real properties located in Maryland, and has engaged in a persistent and regular course of conduct in Maryland, by means of placing and receiving numerous interstate wire communications (telephone, facsimile and electronic mail), and by sending and receiving numerous other written communications through the United States mails, to and from Plaintiffs and others in Maryland, and in other ways and means. Vasquez served as the escrow agent/officer for numerous transactions involving real properties Plaintiffs owned, purchased and/or sold in Maryland.

21.     Davis is an individual residing in Avon, Ohio. Davis acted as a broker for Monster in connection with a transaction or series of transactions in late 2020 and/or early 2021 that was supposed to involve a $4.4 million loan from Attorney Angelo Russo of Fairview Park, Ohio, to

Monster.  However, Davis, Herrera, Vasquez and/or Avance, acting in joint concert, participation and conspiracy with one another, failed to close the Russo loan to Monster but instead surreptitiously exchanged it for a purported loan of $2.5 million supposedly from NHN Properties, LLC, an Ohio limited liability company headquartered in Westlake, Ohio, to Monster, Robinson and Bernard.  But Monster, Robinson and Bernard never knew about the supposed NHN Properties loan at the time, never agreed to it or to its terms, and never signed any loan documents for it.  Any alleged loan documents for a purported loan from NHN Properties to Monster, Robinson and/or Bernard, and all signatures on such fraudulent documents, were forged by Herrera.  On information and belief, NHN Properties forwarded the sum of $2.5 million to Herrera, Vasquez and/or Avance, who paid none of it to or for the benefit of Monster, Robinson, Bernard, or any of their companies or properties, but from which Davis received a $500,000 kickback payment from Herrera, Vasquez and/or Avance.  On information and belief, Attorney Angelo Russo forwarded the sum of $1.2 million to Herrera, Vasquez and/or Avance, but they paid none of it to or for the benefit of Monster, Robinson, Bernard, or any of their companies or properties.

22.     Stewart Title is a Texas corporation having its principal place of business in Houston, Texas.  At all times material to this Complaint, Stewart Title is a business entity that was and is registered and authorized to do business in Maryland.  Stewart Title is a wholly owned subsidiary of Stewart Information.

23.     Stewart Guaranty is a Texas corporation having its principal place of business in Houston, Texas.  At all times material to this Complaint, Stewart Guaranty is a business entity that was and is registered and authorized to do business in Maryland.  Stewart Guaranty is a wholly owned subsidiary of Stewart Information.

24.     Stewart Information is Delaware corporation having its principal place of business in Houston, Texas.  Stewart Information is a holding company that is the corporate parent company

of Stewart Title and Stewart Guaranty.

25.     Doma Title is a South Carolina corporation having its principal place of business in Miami, Florida.  On information and belief, Doma Title is the wholly owned subsidiary of Doma Holdings.

26.     Doma Holdings is a Delaware corporation having its principal place of business in San Francisco, California.  On information and belief, Doma Holdings is a holding company that is the corporate parent company of Doma Title.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

27.     Beginning in or about 2018, Mr. Adams started using Avance, Herrera and Vasquez for title work and escrow services for real estate transactions into which he and his business partner, Robinson, entered on behalf of themselves or their respective investment companies and entities. Eventually, Mr. Adams and Robinson came to rely on Avance, Herrera and Vasquez for all of the title work and escrow services for all real estate transactions involving themselves or their respective companies and entities.

28.     In or about Summer 2018, Mr. Adams decided to have one of the companies he owned with Robinson, LDJ, construct a new building for Clinton Fence.  In or about September 2018, he began to transfer properties owned by his Trust to LDJ as part of financing its construction of the new Clinton Fence facility.  The plan was that LDJ would then lease the new building to Clinton Fence.  He transferred three properties from the Trust to LDJ in or about September 2018; Avance, Herrera and/or Vasquez provided title work and escrow services for all three transactions.

29.     As a result of Mr. Adams subsequently learning in or about December 2018 that he had bladder cancer, he engaged in the process of selling the properties and companies he owned to Robinson from in or about March 2019 through in or about July 2019, inclusive, so that he could concentrate on dealing with his disease and medical condition.

30.     In addition, Robinson acting by and through Monster, Klar, and LDJ continued to buy, sell and/or refinance real properties in the ordinary and usual course of their investment businesses and activities, and Herrera, Vasquez and/or Avance continued to provide title work and escrow services for each of them regarding each such transaction, during the three-year period from in or about September 2018 through in or about September 2021, inclusive.

31.     The services that Herrera, Vasquez and Avance contractually agreed to render to and on behalf of Mr. Adams, Monster, Klar, LDJ, Clinton Fence, Robinson, Bernard, and their respective companies, entities and properties included, without limitation, (i) recording proper, appropriate and valid title to properties that changed hands during any such transactions; (ii) issuing valid title insurance on such titles they prepared and recorded; (iii) properly and appropriately handling the closings on such transactions; (iv) receiving funds and properly holding such funds in escrow in connection with such real estate closings; (v) properly paying the amounts that were supposed to be paid at closing, including without limitation properly paying in full and satisfying any existing mortgages on such properties; (vi) properly releasing all existing liens on such properties that were supposed to be satisfied and paid in full; (vii) properly recording any new mortgages and mortgage liens as a result of such transactions; (viii) properly and appropriately holding in escrow the proceeds from all such transactions that were due to or for the benefit of any Plaintiff; (ix) exercising reasonable due care and fulfilling their fiduciary responsibilities for ensuring the safety and accurate accounting for all funds to be held in escrow, including without limitation the funds that were supposed to be due to be paid to, or held for the benefit of, any Plaintiff; and (x) ensuring that no comingling, misapplication or misappropriation of any such funds would take place.

32.     However, unbeknownst to Mr. Adams or to Robinson, Bernard or anyone associated with them or their companies, and as the result of deliberate steps Herrera, Vasquez and

Avance took over the course of time to conceal their actions and hide the truth from, and to actively misinform, misrepresent and fail to disclose accurate information and the actual situations and circumstances of the transactions they handled to, Mr. Adams, Robinson, Bernard and each of their respective companies, Herrera, Vasquez and/or Avance misused, misapplied, misappropriated, misaccounted for, diverted, converted, and comingled funds belonging to all Plaintiffs that should have been held in escrow for their benefit or paid to third parties to satisfy loans and mortgage liens on Plaintiffs' properties involved in each respective transaction. As a direct and proximate result of such intentional fraudulent concealment, fraudulent omission of true facts, and fraudulent misrepresentations of the facts and circumstances of such transactions, Plaintiffs did not, and in the exercise of reasonable diligence could not, discover the misuse, misapplication, misappropriation, diversion, conversion and comingling of funds at the time it occurred and for a long period of time thereafter.

33.     Specifically, with respect to any real property owned by any Plaintiff, Avance, Herrera and/or Vasquez were supposed to pay off all existing mortgage loans and satisfy and release all existing mortgage liens to the lenders involved in each property that any Plaintiff sold or refinanced. Avance, Herrera and/or Vasquez failed to pay off and satisfy all of the existing mortgage loans and mortgage liens on the properties that any Plaintiff sold or refinanced from the funds Avance, Herrera and/or Vasquez had received in connection with the closing of each such transaction. As a direct and proximate result of such failures, Plaintiffs and each of them, as the case may be, continued to be legally liable and obligated to pay the indebtedness associated with the mortgage loans and liens that should have been fully paid and satisfied at the closing of each such transaction.

34.     Furthermore, with respect to any real property that any Plaintiff bought or acquired between September 2018 and September 2021, inclusive, Avance, Herrera and/or Vasquez were

supposed to pay off all pre-existing mortgage loans and satisfy and release all pre-existing mortgage liens to the respective lenders involved for each property that any Plaintiff sold or refinanced. Avance, Herrera and/or Vasquez failed to pay off and satisfy all of the pre-existing mortgage loans and mortgage liens on the properties that any Plaintiff bought or acquired from the funds Avance, Herrera and/or Vasquez had received in connection with the closing of each such transaction. As a direct and proximate result of such failures, Plaintiffs and each of them, as the case may be, became legally liable and obligated to pay the indebtedness associated with the pre-existing mortgage loans and liens which had previously been recorded against each such property and which should have been fully paid and satisfied at the closing of each such transaction.

35.    Plaintiffs do not know at the present time what Avance, Herrera and/or Vasquez did with the funds they mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled, or where any portion of such funds or money wound up. Plaintiffs state on information and belief that the aggregate amount of funds Avance, Herrera and/or Vasquez received and should have used to pay off and satisfy existing mortgage loans and mortgage liens for real properties that all Plaintiffs sold or purchased or refinanced between September 2018 and September 2021, but that Avance, Herrera and/or Vasquez instead mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled, is in excess of $4 million.

36.    In addition to the foregoing, specifically with respect to any real estate transaction in which any Plaintiff should have received a net distribution of money out of the escrowed funds, from the net proceeds of either a sale, a purchase, or a refinance, Herrera, Vasquez and/or Avance were supposed to deposit into their escrow account all of such net proceeds due to any Plaintiff and to hold such funds in escrow for such Plaintiff's account so that such funds could be subsequently used for his, her or its respective benefit. However, Herrera, Vasquez and/or Avance

failed to deposit and hold all of such net proceeds, or any portion thereof, in escrow for any Plaintiff's account or subsequent use or for his, her or its respective benefit.

37.     Plaintiffs do not know at the present time what Avance, Herrera and/or Vasquez did with the funds they were supposed to escrow for Plaintiffs' account or benefit but that they mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled, or where any portion of such funds or money wound up – such funds have simply disappeared.  Plaintiffs state on information and belief that the amount of funds Avance, Herrera and/or Vasquez received and should have deposited and held in escrow for the accounts and/or subsequent benefit of all Plaintiffs in the aggregate, derived from any and all real estate transactions between September 2018 and September 2021, but that Avance, Herrera and/or Vasquez instead mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled, is in excess of $5 million.

38.     In addition to the mishandling, misappropriation, conversion, comingling and disappearance of funds that should have been either used to pay-off existing mortgage loans and to satisfy and release existing mortgage liens on properties Plaintiffs or each of them bought, sold or refinanced, or deposited in escrow for the respective accounts of each Plaintiff or for his, her or its respective subsequent benefit, Herrera, Vasquez and/or Avance defrauded Plaintiffs and continuously lied and misrepresented to Plaintiffs, and each of them, that mortgages had been properly paid in full or recorded, as the case may be, that titles were properly transferred and recorded, that title insurance was properly obtained to protect the Plaintiff involved in each such transaction, and that all funds and net proceeds due to each Plaintiff from each specific transaction was properly deposited and held in escrow for his, her or its respective subsequent benefit or use in future transactions.  Plaintiffs subsequently discovered that all of such promises, commitments and representations were dishonest and not true.

39.    As set forth above, the first real property transactions subjected to the misconduct of Herrera, Vasquez and/or Avance of which Plaintiffs are now aware were three transactions that closed on or about September 20, 2018, in connection with financing the new Clinton Fence facility in a new location.  In order to raise funds for the new Clinton Fence facility, the Adams Trust sold three real properties – 2380 Old Washington Road, Waldorf, Maryland 20601; 2400 Old Washington Road, Waldorf, Maryland 20601; and 12095 Hintze Place, Waldorf, Maryland 20601 – to LDJ for the total price of $650,000.  To finance this transaction and its purchase of the three properties, LDJ borrowed $650,000 from a private investor, Richard Grodsky, and secured the loan with a first mortgage lien in favor of Mr. Grodsky in that amount.

40.    One of the three properties sold, 2400 Old Washington Road, Waldorf, Maryland 20601, had a pre-existing $250,000 loan from Community Bank of Waldorf.  On information and belief, that loan was secured by an Indemnity of Trust ("IDOT") under Maryland law, and Community Bank placed a UCC-1 filing against Clinton Fence and against the real property located at 11850 Tulip Hill Place, Charlotte Hall, Maryland 20622, which was Mr. Adams' farm and which he had previously sold in or about 2016.

41.    At the September 2018 closing of the above transaction for 2400 Old Washington Road, Avance, Herrera and/or Vasquez failed to pay off a mortgage lien held by Community Bank in the principal amount of $250,000.  Avance, Herrera and/or Vasquez provided an ALTA form that indicated the Community Bank mortgage was paid in full at closing.   This was a false representation.  Herrera later acknowledged that she "missed" paying off the Community Bank mortgage and requested permission to deduct the money needed to pay it in full, together with all accumulated interest until the date of full payment, from the money supposedly being held in escrow for LDJ, conditioned on her promise to replenish those funds into the escrow account within a few months.  LDJ agreed so long as Herrera, Avance and/or Vasquez repaid the money in

full within the promised time frame.

42.    Herrera, Avance and/or Vasquez deducted the sum of $289,960 from the funds they had escrowed for the benefit of LDJ, supposedly to pay the Community Bank mortgage on 2400 Old Washington Road, Waldorf, Maryland 20601, but never repaid those funds into the LDJ escrow account they supposedly maintained as they had promised LDJ they would do.

43.    Herrera, Avance and/or Vasquez hid from LDJ the fact that they never repaid that money into the escrow account for its benefit. As a direct and proximate result of the active efforts of Herrera, Avance and/or Vasquez to hide, conceal and misrepresent the true facts, LDJ did not discover, and through the exercise of reasonable diligence could not have discovered, that Herrera, Avance and/or Vasquez failed to repay the money to LDJ or into an escrow account for LDJ's benefit before it actually discovered the true facts in or about June-July 2021.

44.    Moreover, on information and belief, and without any disclosure to any Plaintiff, Herrera, Avance and/or Vasquez recorded the mortgage lien on the real property at 2400 Old Washington Road, Waldorf, Maryland 20601, in the name of Clinton Fence. Clinton Fence had nothing to do with any of the foregoing transactions and was in no respect liable for any of the foregoing loans nor responsible for paying the mortgage lien on the 2400 Old Washington Road property that Herrera, Avance and/or Vasquez acknowledged they should have paid in full in 2018. Stewart Title and/or Stewart Guaranty claims to have succeeded to the position of the mortgagee on the 2400 Old Washington Road mortgage, and has been demanding and collecting mortgage payments from Clinton Fence for a length of time presently unknown to it or the other Plaintiffs.

45.    In or about December 2019, LDJ entered into a cash-out refinance transaction with a lender named Broadmark in the total amount of $1,377,720, which was supposed to net LDJ (i) the refinance and full payment of the existing mortgages held by Mr. Grodsky on 2380 Old Washington Road, 2400 Old Washington Road, and 12095 Hintze Place, (ii) the payment in full of

the specified remaining debts and obligations of Mr. Adams who wanted them paid off before he died, and (iii) payment of the balance of the funds borrowed from Broadmark into the escrow account maintained by Herrera, Avance and/or Vasquez for the benefit of LDJ. Herrera, Avance and/or Vasquez recorded a first mortgage lien in favor of Broadmark.

46.     On information and belief, Herrera, Avance and/or Vasquez negligently and in breach of their fiduciary duties to LDJ paid Mr. Grodsky the sum of almost $1,000,000, which was far more than he was entitled to receive on his $650,000 loan to LDJ, especially in light of the fact that LDJ had made several principal payments directly to Mr. Grodsky in the 15 months from September 2018 and December 2019.

47.     In further breach of their obligations to LDJ and the other Plaintiffs, Herrera, Avance and/or Vasquez failed once again to pay off the Community Bank mortgage, failed to pay off the further and remaining debts of Mr. Adams as he had directed, and failed to remit the balance of the cash received from the cash-out refinance into the escrow account Herrera, Avance and/or Vasquez were supposed to be maintaining for the benefit of LDJ. As a result of Herrera's, Avance's and/or Vasquez's fraudulent conduct in successfully hiding their nefarious conduct, those funds have never been accounted for. LDJ and the other Plaintiffs did not discover these failures, misappropriations and misapplications of funds until in or about September 2021.

48.     The foregoing was not the end of Herrera's, Avance's and/or Vasquez's misappropriations and misdeeds regarding Clinton Fence. In or about early 2020, LDJ entered into an approximately $3 million loan from Broadmark to use to acquire the assets, building and real property of Clinton Fence located at 2630 Old Washington Road, Waldorf, Maryland 20601. Broadmark forwarded the borrowed funds to Herrera, Avance and/or Vasquez to be deposited into escrow pending the closing of the loan, corporate and real estate transactions. However, it was discovered that Clinton Fence did not own the real estate in which the company operated. LDJ

and Clinton Fence instructed Herrera, Avance and/or Vasquez to return the escrowed funds to Broadmark.  Instead of complying with such instructions, Herrera, Avance and/or Vasquez created a fake contract and forged Mr. Adams' signature on the document.  In addition, they recorded a fraudulent second mortgage lien for the approximately $3 million in favor of Broadmark on the property located at 2400 Old Washington Road.  These events and misdeeds were not discovered by LDJ, Clinton Fence or the other Plaintiffs until in or about mid-2022.

49.    The next series of real estate properties and transactions subjected to the above-described misconduct of Herrera, Vasquez and/or Avance involved the transfers of the following nine properties on Shelton Court in Indian Head, Maryland, that Mr. Adams made to Robinson's company, Monster, after he learned at the end of 2018 that he had terminal cancer:

| Property | Date | Seller | Buyer | Sales Price | Net Amount Due Seller |
|---|---|---|---|---|---|
| 7 Shelton Court Indian Head, MD 20640 | 03/30/2019 | Adams Trust | Monster | $160,000 | $    58,579.79 |
| 8 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | ($    4,721.07) |
| 14 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    7,859.54 |
| 16 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    24,896.21 |
| 18 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    25,325.76 |
| 19 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    25,290.56 |
| 27 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    8,102.66 |
| 28 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    8,306.64 |
| 30 Shelton Court Indian Head, MD 20640 | 03/31/2019 | Adams Trust | Monster | $160,000 | $    8,248.20 |

Totals: $1,440,000 $ 161,888.29

50. The proceeds from the sales of these nine properties were supposed to satisfy and fully pay the existing mortgages on the properties and Mr. Adams' other loans with Community Bank.   In the process of doing so, Herrera, Avance and/or Vasquez apparently absconded with over $330,000 of proceeds that were not accounted for.  In addition, Plaintiffs discovered at the same time in or about October 2021 that the claims and representations by Herrera, Avance and/or Vasquez to Robinson that the escrow account they supposedly maintained for the benefit of Monster had a $5.4 million balance in it was false.

51. Next, the property at 3781 Red Berry Drive, Port Republic, Maryland, was supposed to be conveyed from LDJ to Monster in or about May 2019.  The existing mortgage lien on that property with C Store totaling approximately $225,000 was supposed to have been satisfied in fully by Herrera, Avance and/or Vasquez from the proceeds of Monster's loan from a lender called I-Fund Cities.  However, Herrera, Avance and/or Vasquez failed to satisfy the C Store mortgage and failed to record the new mortgage with I-Fund Cities.  Monster was finally called upon to satisfy the mortgage over a year later at an additional expense of approximately $156,000.  Because Herrera, Avance and/or Vasquez hid these facts from Monster, it did not discover the truth of what Herrera, Avance and/or Vasquez failed to do until in or about October 2021.  Neither Monster nor any other Plaintiff has ever been able to discover what Herrera, Avance and/or Vasquez did with the funds that were supposed to have satisfied the C Store mortgage.

52. In or about April and May 2019, Monster bought the following four properties from the Adams Trust and Herrera, Avance and/or Vasquez were supposed to deposit the net amounts due to the Seller into the escrow account they were supposed to be maintaining for the benefit of the Adams Trust after paying off the existing mortgage on each property.  None of the proceeds from the sale of any of these four properties found its way into the Adams Trust escrow account.

None of the existing mortgages was satisfied. Instead, Herrera, Avance and/or Vasquez mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled the net amounts due to Adams Trust set forth below:

| Property | Date | Seller | Buyer | Sales Price | Net Amount Due Seller |
|---|---|---|---|---|---|
| 37560 Charlotte Hall School Rd Charlotte Hall, MD 20622 | 04/16/2019 | Adams Trust | Monster | $ 415,000 | $ 225,986.46 |
| 27290 Three Notch Road Mechanicsville, MD 20659 | 04/16/2019 | Adams Trust | Monster | $ 435,000 | $ 135,206.77 |
| 3057 Huntington Circle Waldorf, Maryland 20602 | 05/24/2019 | Adams Trust | Monster | $ 230,000 | $  68,967.04 |
| 8537 Sunset Lane Broomes Island, MD 20615 | 05/24/2019 | Mr. Adams | Monster | $  235,000 | $  84,390.60 |
| | | | Totals: | $1,315,000 | $ 514,550.87 |

53.     To be clear, neither the Adams Trust nor Mr. Adams ever received from Herrera, Vasquez and/or Avance any portion of the funds due from the net proceeds of the sales of these real properties, either as cash distributions or funds held in escrow by Herrera, Vasquez and/or Avance for their present or future use or their subsequent benefit.

54.     The identical situation occurred in or about July 2019 with regard to the following two additional properties:

| Property | Date | Seller | Buyer | Sales Price | Net Amount Due Seller |
|---|---|---|---|---|---|
| 6026 Swanson Creek Lane Hughesville, MD 20637 | 07/02/2019 | Mr. Adams | Monster | $540,000 | $ 539,700.00 |
| 6024 Swanson Creek Lane Hughesville, MD 20637 | 07/26/2019 | Mr. Adams | Monster | $435,000 | $ 273,145.45 |
| | | | Totals: | $975,000 | $ 812,845.45 |

Mr. Adams never received from Herrera, Vasquez and/or Avance any portion of the funds due from the net proceeds of the sales of these real properties, either as cash distributions or funds held in

escrow by Herrera, Vasquez and/or Avance for their present or future use or their subsequent benefit.

55.    In or about October 2019, Monster borrowed $353,430 from Lion's Mane Financial to pay off a loan from Community Bank.  Instead of satisfying the Community Bank loan from the proceeds of the financing from Lion's Mane Financial, on information and belief Herrera, Avance and/or Vasquez absconded with the funds.  Certainly, Herrera, Avance and/or Vasquez mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled such funds from the Lion's Mane Financial loan.  Herrera, Avance and/or Vasquez hid these facts from Monster and all other Plaintiffs, and Monster did not discover their deception until in or about September-October 2021.  Monster had to repurchase the property, which is Bernard's residence, at the foreclosure sale in or about December 2023 at a cost of $449,273.06 which it borrowed from attorney Angelo Russo.

56.    In or about January 2021, Monster had the opportunity to purchase and develop the Westphalia project consisting of 1,260 residential building lots located in Upper Marlboro, Maryland, which stood to make it a profit of $27 million when fully developed.  Monster had arranged a $4.4 million loan from attorney Angelo Russo for this purchase.  The first $1.8 million came in to Herrera, Avance and/or Vasquez through Davis which were to be used to satisfy the Broadmark loan on the Westphalia property as well as to secure Robinson's investment in the project.  Herrera, Avance and/or Vasquez failed to satisfy the Broadmark loan.  Furthermore, NHN Properties claimed to have loaned money for this matter but neither Monster nor any Plaintiff knew about or approved any involvement by NHN Properties.  Monster did not discover these circumstances until in or about June 2021.  In addition to the lost opportunity for the $27 million profit from the Westphalia project, Monster suffered a cash loss of $3,423,000 plus incurring attorneys' fees totaling over $600,000 as a direct result the wrongful conduct of Herrera, Avance

and/or Vasquez.

57.     In or about March 2021, Monster intended to refinance and satisfy its mortgage loans and debts to investor Paul Feilberg on the three properties located at 6027 Swanson Creek Lane, Hughesville, Maryland 20637, 44721 Emma Lane, Hollywood, Maryland 20636, and 36975 Dixie Lion Road, Mechanicsville, Maryland 20659. A private investor named Ted Hassar provided funds totaling $1 million to pay off the Feilberg mortgage loans on these properties which were delivered to Herrera, Avance and/or Vasquez. However, Herrera, Avance and/or Vasquez failed to use the funds to satisfy the Feilberg mortgage loans. Instead, Herrera, Avance and/or Vasquez mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or comingled such funds totaling $1 million, a fact that Monster discovered in or about June 2021. In order not to leave Mr. Feilberg bearing the brunt of Herrera's, Avance's and/or Vasquez's defalcations, Monster eventually repaid Mr. Feilberg at the additional cost of $248,359.

58.     In or about June 2021, Monster borrowed three separate loans from I-Fund Cities for the cash-out refinance of 16 properties – the 9 Shelton Court properties, 6024 Swanson Creek Lane, 6026 Swanson Creek Lane, and the following five additional properties:

> 27290 Three Notch Road, Mechanicsville, Maryland 20659
> 8537 Sunset Lane, Broomes Island, Maryland
> 37560 Charlotte Hall School Road, Charlotte Hall, Maryland 20622
> 40362 Dockser Drive, Mechanicsville, Maryland 20659
> 3057 Huntington Circle, Waldorf, Maryland 20603

The three I-Fund Cities loans were for $1,165,500 on or about June 9, 2021, $868,000 on or about June 11, 2021, and $1,977,500 on or about June 16, 2021, for a total of $4,011,000. These 16 properties should have been unencumbered and free and clear in June 2021, but Monster discovered in or about June-July 2021 that Herrera, Avance and/or Vasquez had failed to satisfy the pre-existing mortgages on these properties. Instead, Herrera, Avance and/or Vasquez mishandled, misused, misapplied, misappropriated, misaccounted for, converted, diverted and/or

comingled the funds that they should have used to satisfy the mortgages on each of the 16 properties. As a result, the $4 million proceeds from the cash-out refinance could not be used for Monster's business needs but had to be used towards satisfying the mortgage balances that Herrera, Avance and/or Vasquez should have paid off previously.

59.     In or about August 2021, Monster entered into a refinancing transaction with DLP Capital for the real property located at 36029 Center Avenue, Chaptico, Maryland 20621. The loan proceeds were placed in escrow with Herrera, Avance and/or Vasquez to satisfy the existing mortgage. In or about Spring 2022, Monster discovered that Herrera, Avance and/or Vasquez had failed to record Monster's deed and also failed to record DLP Capital's mortgage. As a result of Herrera's, Avance's and/or Vasquez's defalcations and their mishandling, misuse, misapplication, misappropriation, misaccounting for, conversion, diversion and/or comingling the funds they should have used to satisfy the mortgage on this property, Monster lost the property at foreclosure along with its approximately $350,000 net fair market value.

60.     In or about September 2021, Monster financed its purchase of the 56-acre property located at 16290 Prince Frederick Road, Hughesville, Maryland 20637, using a loan from I-Fund Cities at a very favorable 4.9% interest rate. Monster agreed to mortgage liens on the 56-acre Prince Frederick Road parcel as well as on 6026 Swanson Creek Lane, Hughesville, Maryland 20637, as security for the loan and to receive a line of credit to complete the engineering and subdivision work on the 56 acres for a mixed-use commercial/residential development. Monster discovered shortly thereafter that Herrera, Avance and/or Vasquez recorded mortgage liens supposedly owed by Monster and Klar when only Monster should have been liable on the I-Fund Cities mortgage. Furthermore, Monster discovered that Herrera, Avance and/or Vasquez failed to record and/or misrecorded the mortgage lien of Stormfield Capital Funding I, LLC on the 6026 Swanson Creek Lane property. As a result of Herrera's, Avance's and/or Vasquez's defalcations,

Monster was in jeopardy of losing its investment in the 56-acre parcel and lost significant sums of money in trying to correct the title and mortgage issues.

61.     In addition, Monster discovered in or about September 2021 that, instead of having approximately $7 million being held in escrow by Herrera, Avance and/or Vasquez for its benefit and future use to close the Westphalia project and Clinton Fence acquisition and investment, there was actually no money in the escrow account being held for Monster's benefit.  Herrera's, Avance's and/or Vasquez's mishandling, misuse, misapplication, misappropriation, misaccounting for, conversion, diversion and/or comingling of the funds that should have been held in escrow have damaged Monster in the approximate amount of $7 million.

62.     Throughout the course of their business relationship, and particularly during the period of time from January 2020 through September 2021, inclusive, Herrera, Avance and/or Vasquez asked to borrow over $1.47 million in the aggregate from various of the Plaintiffs, specifically including Mr. Adams, Robinson and Monster, and to borrow several hundred thousand dollars in addition from the money she was supposedly holding in Mr. Adams' and Robinson's escrow accounts.  Herrera claimed to Mr. Adams or Robinson that they need the borrowed funds for a variety of reasons – for a client who was short at closing and needed a bridge loan which would be paid back with 10% interest, or for Herrera's son Manolo, or because Herrera made a mistake by depositing money in one client's account when it needed to go into another client's escrow account and she would have to make up for it, and so forth.  Herrera then claimed to repay each of those loans by depositing the repayments, with 10% interest, into Mr. Adams', Robinson's and Monster's respective escrow accounts.

63.     In or about August-September 2021, Robinson discovered the true state of affairs that Herrera, Avance and/or Vasquez had not repaid any of the funds they had taken from the money that should have been held in escrow for the benefit of Mr. Adams, Robinson or Monster, as the

case may be, and that there were no funds at all remaining in escrow for them or any other Plaintiff. If there had been funds held in escrow at any point in time, Herrera, Avance and/or Vasquez had depleted them. Otherwise, Herrera, Avance and/or Vasquez siphoned the funds they "borrowed" from the money deposited for various transactions, including the closings of the sales, purchases and refinancings of real properties they handled.

64. The multiple and nefarious efforts of Herrera, Vasquez and Avance to conceal their various frauds, manipulations, mishandlings, misuses, misapplications, misappropriations, misaccountings for, conversions, diversions and cominglings of Plaintiffs' funds, and their lies, fraudulent misrepresentations, and fraudulent omissions of material facts on which Plaintiffs' reasonably and justifiably relied, succeeded in hiding the truth from Plaintiffs of what Herrera, Vasquez and Avance were actually doing and not doing with Plaintiffs' funds for a long time. As a result, neither Plaintiffs nor anyone acting with reasonable diligence would have had any reason to suspect Herrera, Vasquez and/or Avance or any reasonably recognizable notice that they were mishandling, misappropriating, converting or diverting Plaintiffs' funds until a date in late April or May 2021. Plaintiffs did not, in fact, discover the nature and scope of Herrera's, Vasquez's and Avance's conduct or the fact that they had committed these wrongful acts and omissions until in or about June and July 2021, but they recognize with the benefit of hindsight that there were subtle warning signs and red flags about Herrera's, Vasquez's and Avance's misbehavior that a reasonably diligent person might have recognized as early as late April or May, 2021, when certain minor discrepancies in the documentation for a couple of the real estate transactions came to light. Therefore, the applicable three-year statute of limitations on Plaintiffs' state-law claims for relief asserted in this Complaint began to run in late April or May, 2021, when Plaintiffs discovered, or through the exercise of reasonable due diligence should have discovered, their injuries, and this action asserting Plaintiffs' several state-law claims has been timely commenced.

26

65.     In view of the fact that Plaintiffs were or should have been on inquiry notice of the "storm warnings" of Herrera's, Vasquez's and/or Avance's fraud – *i.e.*, where a reasonable person of ordinary intelligence would know or reasonably should have known that they had suffered injury – the applicable four-year statute of limitations on Plaintiffs' RICO claim for relief asserted in this Complaint began to run in late April or May 2021, when Plaintiffs should have been on inquiry notice of storm warnings of Herrera's, Vasquez's and/or Avance's fraud.  Therefore, this action asserting Plaintiffs' federal RICO claim has been timely commenced.  Moreover, the damages period for Plaintiffs' RICO claim extends to Herrera's, Vasquez's and/or Avance's fraudulent actions or omissions causing injury to any Plaintiff from and after March 14, 2020.

## CLAIMS FOR RELIEF

### First Claim for Relief
(Breach of Contract)

66.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through Sixty-five (65), inclusive, above as if the same were fully rewritten herein.

67.     The business relationship between each Plaintiff and Herrera, Avance and Vasquez was contractual in nature.  Each Plaintiff entered into an oral contract with Herrera, Avance and Vasquez in consideration of their handling all of Plaintiffs' real estate transactions.  For each such transaction, Herrera, Avance and Vasquez received an escrow fee and title fee.  In exchange, Herrera, Avance and Vasquez contracted with each Plaintiff to (i) conduct each real estate closings properly and in accordance with the respective HUD or ALTA documents, (ii) fully pay off and satisfy all existing mortgage loans on such real properties, (iii) properly and validly record titles to real properties sold and bought, (iv) properly and validly record any new mortgage loans on properties being refinanced or acquired, (v) deposit funds due respectively to each Plaintiff in an appropriate escrow account maintained separately and not comingled with other funds, (vi) pay

27

off all debts and obligations of Plaintiffs as agreed between them and Herrera, Avance and/or Vasquez, and (vii) repay any funds they borrowed from various Plaintiffs either directly or by depositing such repayments into an escrow account maintained for the benefit of each Plaintiff to whom they owed repayment.

68.     Herrera, Avance and/or Vasquez have breached their oral contract with each Plaintiff, entered into in consideration of their handling all of Plaintiffs' real estate transactions and receiving an escrow fee and title fee for each, by repeatedly and persistently failing and refusing to (i) conduct the real estate closings properly and in accordance with the respective HUD or ALTA documents, (ii) fully pay off and satisfy existing mortgage loans on such real properties, (iii) properly and validly record titles to real properties sold and bought, (iv) properly and validly record new mortgage loans on properties being refinanced or acquired, (v) deposit funds due respectively to each Plaintiff in an appropriate escrow account maintained separately and not comingled with other funds, (vi) pay off the debts and obligations of Plaintiffs as agreed between them and Herrera, Avance and/or Vasquez, and (vii) repay the funds they borrowed from various Plaintiffs either directly or by depositing such repayments into an escrow account maintained for the benefit of each Plaintiff to whom they owed repayment.

69.     As a direct and proximate result of Herrera's, Avance's and/or Vasquez's multiple and repeated breaches of their oral contracts with Plaintiffs, each Plaintiff has been damaged in the amount in excess of $75,000 as will be shown by the evidence introduced at trial.

**Second Claim for Relief**
(Breach of Fiduciary Duties)

70.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through Sixty-nine (69), inclusive, above as if the same were fully rewritten herein.

71.     A fiduciary or confidential relationship exists when one party has a position of

superior knowledge and influence, the other party has inferior knowledge and influence, and the stronger party is responsible for protecting the interests of the weaker party. Fiduciary duties also arise when one holds something in trust for the benefit of the other.

72.    A fiduciary must treat his principal with the utmost candor, rectitude, care, loyalty, and good faith – in fact to treat the principal as well as the fiduciary would treat himself or itself. Fiduciaries must perform their duties with the same level of care, skill, prudence and diligence that a prudent person would use under the circumstances. The prudence required of a fiduciary is that of a prudent fiduciary with experience dealing with similar matters – not the prudence required of an ordinary layperson.

73.    Herrera, Avance, and Vasquez, and each of them, owed certain fiduciary duties to each Plaintiff, including without limitation the fiduciary duties of due care, loyalty, good faith and fair dealing with respect to the handling of their real property transactions and their money being handled by Herrera, Avance and/or Vasquez.

74.    Herrera, Avance and Vasquez had a legal duty under Maryland law to act in good faith and with reasonable care with respect to the financial interests of each Plaintiff.

75.    Herrera, Avance, and Vasquez, and each of them, breached their fiduciary duties owed to each Plaintiff by committing the wrongful misconduct and acts of deceit, misrepresentation and non-disclosure, and violations of law alleged in this Complaint. In addition, and as a consequence of the foregoing acts of misconduct and deception, Herrera, Avance and/or Vasquez profited from the breaches of their fiduciary duties and deceived Plaintiffs into continuing to do business with them.

76.    On account of not having their existing obligations properly and fully satisfied and paid off by Herrera, Avance and/or Vasquez from the funds belonging to Plaintiffs or to be spent for Plaintiffs' benefit that Herrera, Avance and/or Vasquez held in their fiduciary capacities,

Plaintiffs were further damaged by having to pay twice and usually more than twice for such unsatisfied debts, obligations, mortgages and liens.

77.     As a direct and proximate result of the foregoing breaches of fiduciaries duties by Herrera, Avance and Vasquez, and each of them, Plaintiffs have been damaged in an amount in excess of $7,000,000 to be determined from the evidence in accordance with law.

78.     The foregoing breaches of fiduciary duties were committed intentionally, or with reckless or callous indifference to the protected property and financial rights of each Plaintiff, thereby Plaintiffs to an award of punitive damages against Herrera, Avance and Vasquez, and each of them, jointly and severally.

79.     Herrera, Avance and Vasquez are jointly and severally liable for the foregoing damages.

### Third Claim for Relief
(Fraud)

80.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through Seventy-nine (79), inclusive, above as if the same were fully rewritten herein.

81.     From and after in or about March 2019 through in or about September 2021, Herrera, Avance and/or Vasquez made repeated representations of fact to each Plaintiff concerning the funds to which each was entitled from the various real estate transactions they were handling, and how much money they had deposited into each Plaintiff's escrow account, as alleged above.

82.     The  representations of fact were material to inducing each Plaintiff to (i) enter into a business relationship with Herrera, Avance and/or Vasquez to provide title services, escrow services and closing services to Plaintiffs in connection with an ongoing series of real estate transactions from in or about March 2019 through in or about September 2021, and (ii) continue to do business with Herrera, Avance and/or Vasquez by which they continued to receive a title fee

and/or an escrow fee for each such transaction.

83.    However, as alleged above, Herrera's, Avance's and/or Vasquez's representations of fact were materially false and misleading.  In addition, Herrera's, Avance's and/or Vasquez's omissions of material facts were, under the circumstances in which they were made, likewise misleading.

84.    On information and belief, Herrera's, Avance's and/or Vasquez's false representations of material fact were made with knowledge of their falsity, or made with such utter disregard and recklessness as to whether they were true or false that Herrera's, Avance's and/or Vasquez's knowledge of their falsity may be inferred.

85.    On information and belief, Herrera's, Avance's and/or Vasquez's false representations of material fact were made with the intent that each Plaintiff rely upon them.

86.    Plaintiffs, and each of them, justifiably relied to their detriment upon such material misrepresentations to the extent each Plaintiff continued to do business with Herrera, Avance and/or Vasquez and continued to lose substantial sums of money as a result of their continuous tortious conduct as alleged in this Complaint.

87.    Herrera's, Avance's and/or Vasquez's false representations of material fact and material omissions proximately caused injury to each Plaintiff by causing each to continue to do business with them and by causing Plaintiffs, and each of them, to incur substantial losses of money and out-of-pocket expenses in connection with the real estate transactions that Herrera, Avance and/or Vasquez were supposed to handle.

88.    As a direct and proximate result of such fraudulent misrepresentations, material omissions and fraudulent inducements, Plaintiffs have been damaged in an aggregate amount in excess of $7 million plus increased expenses and/or liability exposure incurred in connection with many of the Properties involved, as will be shown by the evidence introduced at trial.

## Fourth Claim for Relief
### (Fraudulent Inducement)

89.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through Eighty-eight (88), inclusive, above as if the same were fully rewritten herein.

90.    From and after in or about March 2019 through in or about September 2021, Herrera, Avance and/or Vasquez made repeated representations of fact to each Plaintiff concerning the funds to which each was entitled from the various real estate transactions they were handling, and how much money they had deposited into each Plaintiff's escrow account, as alleged above.

91.    The representations of fact were material to inducing each Plaintiff to (i) enter into a business relationship with Herrera, Avance and/or Vasquez to provide title services, escrow services and closing services to Plaintiffs in connection with an ongoing series of real estate transactions from in or about March 2019 through in or about September 2021, and (ii) continue to do business with Herrera, Avance and/or Vasquez by which they continued to receive a title fee and/or an escrow fee for each such transaction.

92.    However, as alleged above, Herrera's, Avance's and/or Vasquez's representations of fact were materially false and misleading.  In addition, Herrera's, Avance's and/or Vasquez's omissions of material facts were, under the circumstances in which they were made, likewise misleading.

93.    On information and belief, Herrera's, Avance's and/or Vasquez's false representations of material fact were made with knowledge of their falsity, or made with such utter disregard and recklessness as to whether they were true or false that Herrera's, Avance's and/or Vasquez's knowledge of their falsity may be inferred.

94.    On information and belief, Herrera's, Avance's and/or Vasquez's false representations of material fact were made with the intent that each Plaintiff rely upon them.

95.     Plaintiffs, and each of them, justifiably relied to their detriment upon such material misrepresentations to the extent each Plaintiff continued to do business with Herrera, Avance and/or Vasquez and continued to lose substantial sums of money as a result of their continuous tortious conduct as alleged in this Complaint.

96.     Herrera's, Avance's and/or Vasquez's false representations of material fact and material omissions proximately caused injury to each Plaintiff by causing each to continue to do business with them and by causing Plaintiffs, and each of them, to incur substantial losses of money and out-of-pocket expenses in connection with the real estate transactions that Herrera, Avance and/or Vasquez were supposed to handle.

97.     As a direct and proximate result of such fraudulent misrepresentations, material omissions and fraudulent inducements, Plaintiffs have been damaged in an aggregate amount in excess of $7 million plus increased expenses and/or liability exposure incurred in connection with many of the Properties involved, as will be shown by the evidence introduced at trial.

**Fifth Claim for Relief**
<u>(Conversion)</u>

98.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through Ninety-seven (97), inclusive, above as if the same were fully rewritten herein.

99.     Herrera, Avance and/or Vasquez had and continue to have a duty to maintain and preserve their customers' escrow accounts and to prevent their diminution or diminishment through their own wrongful acts.

100.     Herrera, Avance and/or Vasquez have wrongfully collected fees as a result of Plaintiffs' business transactions that they have mishandled and have taken specific and readily identifiable funds from Plaintiffs' accounts for their own uses, purposes and benefit.

101.     Herrera, Avance and/or Vasquez have, without proper authorization, assumed and

exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and without legal or contractual justification.

102.    Herrera, Avance and/or Vasquez continue to retain these funds unlawfully without the consent of Plaintiffs.

103.    Herrera, Avance and/or Vasquez intend to permanently deprive Plaintiffs of these funds.

104.    These funds are properly owned by Plaintiffs, not Herrera, Avance and/or Vasquez who now assert entitlement, ownership and/or control of such funds, contrary to the rights of Plaintiffs and each of them.

105.    Plaintiffs, and each of them, are entitled to the immediate possession of these funds.

106.    Herrera, Avance and/or Vasquez have wrongfully converted these specific and readily identifiable funds.

107.    The above-alleged wrongful conduct of Herrera, Avance and/or Vasquez is continuing.

108.    As a direct and proximate result of this wrongful conversion, Plaintiffs and each of them have suffered and continue to suffer damages.

109.    As a direct and proximate result of the foregoing wrongful conversions, Plaintiffs and each of them are entitled to recover from Herrera, Avance and/or Vasquez all damages and costs permitted by law, including all amounts that Herrera, Avance and/or Vasquez have wrongfully converted.

**Sixth Claim for Relief**
(Negligence)

110.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Nine (109), inclusive, above as if the same were fully rewritten herein.

111.    Herrera, Avance and Vasquez assumed the duty to each Plaintiff, or had the duty imposed on them by Maryland law, to exercise reasonable care in handling their real estate transactions and monies associated with them.  By mishandling, misappropriating, misaccounting for, converting and comingling Plaintiffs' funds, Herrera, Avance and/or Vasquez failed to meet the standard of reasonable care that each of them owed to each Plaintiff and, consequently, Herrera, Avance and/or Vasquez was negligent in the performance of the duties owed to each Plaintiff.

112.    It was foreseeable to Herrera, Avance, and Vasquez, and each of them, that as a proximate consequence of having mishandled, misappropriated, misaccounted for, converted and comingled Plaintiffs' funds, each Plaintiff would have left an amount materially less than each was properly entitled to receive.  Each Plaintiff was damaged as a result of having received less money than each was entitled to from each transaction that Herrera, Avance and/or Vasquez handled as title agent and/or escrow agent.

113.    Herrera, Avance and Vasquez, and each of them, failed to exercise reasonable care in discharging their duties to each Plaintiff by their various failures and mishandling of funds alleged in this Complaint, resulting in an amount of money being paid to each Plaintiff or for his, her and its benefit that was, in fact, unfair, unreasonable, inequitable and inadequate to them.

114.    The wrongful actions and omissions of Herrera, Avance and/or Vasquez directly and proximately caused each Plaintiff to receive less money than was fair, reasonable, equitable or appropriate for each real estate transaction they handled.

115.    As a direct and proximate result of the foregoing acts of negligence committed by Herrera, Avance and/or Vasquez, each Plaintiff has been damaged because each received less money or proceeds from each transaction than that which constituted the fair, reasonable and correct sum, in an aggregate amount in excess of $7,000,000 to be determined from the evidence in accordance with law.

116.    Herrera, Avance and Vasquez are jointly and severally liable for the foregoing damages.

**Seventh Claim for Relief**
(<u>Negligent Misrepresentation</u>)

117.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Sixteen (116), inclusive, above as if the same were fully rewritten herein.

118.    On information and belief, Herrera, Avance and/or Vasquez fraudulently, recklessly or negligently concealed from each Plaintiff the true nature of what they were doing and not doing in connection with the proceeds from each real estate transaction they handled during the relevant time period.

119.    On information and belief, Herrera, Avance and/or Vasquez fraudulently, recklessly or negligently concealed material facts about which mortgages were paid and not paid, which liens were satisfied and release and which were not, which deeds were recorded and which were not, and the fact that no funds from the multiple real estate transactions were being placed and held in escrow.  Not knowing the omitted material information, Plaintiffs continued to do business with Herrera, Avance and Vasquez not realizing that each was losing more money with each subsequent transaction they permitted Herrera, Avance and Vasquez to handle.

120.    As a direct and proximate result of Defendants' fraudulent, reckless or negligent misrepresentations as set forth above, and their fraudulently, recklessly or negligently concealing such material information from them, Plaintiffs have suffered direct, indirect and consequential damages including, without limitation, loss of investment capital, profits and business opportunities, in an amount in excess of $7,000,000 to be proven at trial.

**Eighth Claim for Relief**
(<u>Promissory Estoppel</u>)

121.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Twenty (120), inclusive, above as if the same were fully re-written herein.

122.    In reliance upon the many representations of Herrera, Avance and/or Vasquez that they would adhere to the terms of their oral agreements with each Plaintiff regarding the escrow and title services they would render and how they would handle each real estate transaction, Plaintiffs continued to do business with Herrera, Avance and Vasquez instead of taking their real estate transactions to another escrow agent and title agent.  Herrera's, Avance's and Vasquez's false representations caused and induced each Plaintiff to change his, her and its position in detrimental reliance on such representations.

123.    As a direct and proximate result of Herrera's, Avance's and Vasquez's willful, knowing and intentional failure to fulfill its obligations and representations to each Plaintiff, each Plaintiff has sustained damages, including but not limited to lost money and proceeds from real estate transactions, lost funds that were supposed to be deposited and held in escrow, and has incurred other losses, legal fees and costs.

**Ninth Claim for Relief**
(RICO Claim for Violations of 18 U.S.C § 1962(c) Against Herrera, Avance, Vasquez and Davis as Persons Associated With an Enterprise for Conducting or Participating in the <u>Conduct of the Enterprise's Affairs through a Pattern of Racketeering Activity</u>)

124.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Twenty-three (123), inclusive, above as if the same were fully rewritten herein.

125.    Herrera is a "person" as that term is defined and used in the RICO statutes.

126.    Avance is a "person" as that term is defined and used in the RICO statutes.

127.    Vasquez is a "person" as that term is defined and used in the RICO statutes.

128.    Davis is a "person" as that term is defined and used in the RICO statutes.

129.    The association-in-fact among Herrera, Avance, Vasquez and/or Davis during the period from in or about September 2018 through in or about September 2021, inclusive, constitutes an "enterprise" as that term is defined and used in the RICO statutes which was engaged in, or the activities of which affected, interstate commerce within the meaning of 18 U.S.C. § 1961(4).

130.    Herrera, Avance, Vasquez and/or Davis conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including without limitation the scheme fraudulently to induce each Plaintiff to engage the title services and escrow services of the enterprise on the promises and representations that each real estate transaction would be properly and professionally handled for the financial benefit of the parties as set forth in the various closing documents, including without limitation the HUD and/or ALTA documents and escrow instructions, while intending to divert and convert money that was supposed to be paid or deposited for the benefit of each respective Plaintiff to themselves instead.

131.    The detailed factual allegations of this Complaint demonstrate that Herrera, Avance, Vasquez and/or Davis formed and participated in a scheme or artifice intended to defraud Plaintiffs out of their money and property.

132.    As demonstrated in detail above, in furtherance of the aforesaid schemes or artifices to defraud, between in or about September 2018 and in or about September 2021, inclusive, Herrera, Avance, Vasquez and/or Davis engaged in numerous predicate acts of mail fraud and wire fraud in violation of the provisions of 18 U.S.C. §§ 1341 and 1343, respectively, by using the United States mails and interstate wires through telephonic communications, facsimile transmissions, and electronic mail to send false and misleading information and communications regarding the numerous real estate transactions they were handling for Plaintiffs, and for the

purpose of furthering and executing their fraudulent schemes, all of which constitute predicate acts of "racketeering activity" as defined at 18 U.S.C. § 1961(1).

133.    The schemes to defraud alleged in greater detail above are sufficiently continuous over a period of one and a half years and sufficiently related to one another to constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

134.    Herrera, Avance, Vasquez and/or Davis have directly or indirectly acquired or maintained their respective interests in or control of the enterprise consisting of the association-in-fact among them through a pattern of racketeering activity, in violation of the provisions of 18 U.S.C. § 1962(b).

135.    Herrera, Avance, Vasquez and/or Davis, as persons associated with the enterprise consisting of the association-in-fact among them, have directly or indirectly conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of the provisions of 18 U.S.C. § 1962(c).

136.    Herrera, Avance, Vasquez and/or Davis have conspired together to violate the provisions of RICO, which conspiracy is itself a violation of the provisions of 18 U.S.C. § 1962(d).

137.    As a direct and proximate result of Herrera's, Avance's, Vasquez's and/or Davis' RICO violations, Plaintiffs and each of them have been injured in their respective business or property in the aggregate amount in excess of $7,000,000 to be proven at trial.

138.    Pursuant to the provisions of 18 U.S.C. § 1964(c), Plaintiffs and each of them are entitled to recover from Herrera, Avance, Vasquez and/or Davis, jointly and severally, three times the amount of the damages that Plaintiffs and each of them have actually sustained, together with the costs of this action including reasonable attorneys' fees.

**Tenth Claim for Relief**
(Separate RICO Claim Under 18 U.S.C § 1962(d) Against Herrera, Avance,
Vasquez and Davis for Conspiracy to Commit RICO Violations)

139.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Thirty-eight (138), inclusive, above as if the same were fully rewritten herein.

140.    Herrera, Avance, Vasquez and/or Davis are jointly and severally liable under 18 U.S.C. § 1962(d) for engaging in a conspiracy to commit the RICO violations alleged in the Ninth Claim for Relief above – conducting or participating in the conduct of the affairs of the association-in-fact among them through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

141.    In furtherance of the aforesaid conspiracy and her overt participation in the conspiracy to commit the alleged schemes and artifices to defraud, Herrera committed various overt acts and utilized the United States mails and the interstate wires through telephonic communications, facsimile transmissions and electronic mail, in violation of the provisions of 18 U.S.C. §§ 1341 and 1343, to send false and misleading information and communications regarding the numerous real estate transactions she was handling for Plaintiffs or in which she was involved, and for the purpose of furthering and executing their fraudulent schemes, all of which constitute predicate acts of "racketeering activity" as defined at 18 U.S.C. § 1961(1).

142.    In furtherance of the aforesaid conspiracy and its overt participation in the conspiracy to commit the alleged schemes and artifices to defraud, Avance committed various overt acts and utilized the United States mails and the interstate wires through telephonic communications, facsimile transmissions and electronic mail, in violation of the provisions of 18 U.S.C. §§ 1341 and 1343, to send false and misleading information and communications regarding the numerous real estate transactions it was handling for Plaintiffs or in which it was involved, and for the purpose of furthering and executing their fraudulent schemes, all of which constitute

predicate acts of "racketeering activity" as defined at 18 U.S.C. § 1961(1).

143.    In furtherance of the aforesaid conspiracy and his overt participation in the conspiracy to commit the alleged schemes and artifices to defraud, Vasquez committed various overt acts and utilized the United States mails and the interstate wires through telephonic communications, facsimile transmissions and electronic mail, in violation of the provisions of 18 U.S.C. §§ 1341 and 1343, to send false and misleading information and communications regarding the numerous real estate transactions he was handling for Plaintiffs or in which he was involved, and for the purpose of furthering and executing their fraudulent schemes, all of which constitute predicate acts of "racketeering activity" as defined at 18 U.S.C. § 1961(1).

144.    In furtherance of the aforesaid conspiracy and his overt participation in the conspiracy to commit the alleged schemes and artifices to defraud, Davis committed various overt acts and utilized the United States mails and the interstate wires through telephonic communications, facsimile transmissions and electronic mail, in violation of the provisions of 18 U.S.C. §§ 1341 and 1343, to send false and misleading information and communications regarding the real estate transactions he was handling for Plaintiffs or in which he was involved, and for the purpose of furthering and executing their fraudulent schemes, all of which constitute predicate acts of "racketeering activity" as defined at 18 U.S.C. § 1961(1).

145.    As a direct and proximate result of Herrera's, Avance's, Vasquez's and/or Davis' conspiracy to commit RICO violations, Plaintiffs and each of them have been injured in their business and property in an amount in excess of $7,000,000 to be proven at trial.

146.    Pursuant to the provisions of 18 U.S.C. § 1964(c), Plaintiffs and each of them are entitled to recover from Herrera, Avance, Vasquez and/or Davis, jointly and severally, three times the amount of the damages that Plaintiffs and each of them have actually sustained, together with the costs of this action including reasonable attorneys' fees.

**Eleventh Claim for Relief**
(Claim Against the Stewart Defendants for Breach of Title Insurance Contract)

147.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Forty-six (146), inclusive, above as if the same were fully rewritten herein.

148.    Stewart Title entered into multiple agreements to provide title insurance coverage for real estate transactions on behalf of or for the benefit of each Plaintiff in which Herrera, Avance and/or Vasquez were providing title services and escrow services requiring to close the transaction. On information and belief, such title insurance protected the customers of Herrera, Avance and/or Vasquez from damages caused by buyers, sellers and/or property owners by the errors or omissions of Herrera, Avance and/or Vasquez in their handling of the titles, mortgages and escrow services required in connection with real estate transactions.

149.    Stewart Guaranty entered into multiple agreements to provide title insurance coverage for real estate transactions on behalf of or for the benefit of each Plaintiff in which Herrera, Avance and/or Vasquez were providing title services and escrow services requiring to close the transaction.  On information and belief, such title insurance protected the customers of Herrera, Avance and/or Vasquez from damages caused by buyers, sellers and/or property owners by the errors or omissions of Herrera, Avance and/or Vasquez in their handling of the titles, mortgages and escrow services required in connection with real estate transactions.

150.    On information and belief, Stewart Title and/or Stewart Guaranty had actual knowledge of, or became aware of, the errors and omissions committed by, and the fraudulent activities, including forging documents and forging signatures on documents, of Herrera, Avance and/or Vasquez in connection with their handling of the titles, mortgages and escrow services required in connection with real estate transactions for Plaintiffs and each of them.

151.    On information and belief, Stewart Title and/or Stewart Guaranty has paid claims

on behalf of Herrera, Avance and/or Vasquez and has purported to succeed to the position of Herrera, Avance and/or Vasquez in such matters. On information and belief, Stewart Title and/or Stewart Guaranty have paid claims for mortgagees and other parties who have been damaged by the fraudulent activities, errors and omissions of Herrera, Avance and/or Vasquez, and have purported to succeed to the position of such mortgagees and other parties in such matters.

152.    Nevertheless, Stewart Title and/or Stewart Guaranty have not paid, reimbursed or covered the damages and losses suffered by Plaintiffs as a result of the errors and omissions and fraudulent activities of Herrera, Avance and/or Vasquez. Instead, Stewart Title and/or Stewart Guaranty have falsely blamed some of the Plaintiffs and falsely accused them of committing fraud in connection with certain of the real estate transactions rather than placing the blame on Herrera, Avance and/or Vasquez as it truly and correctly should have been assigned.

153.    As a direct and proximate result of the breach of their title insurance agreements covering Plaintiffs' properties and transactions. Stewart Title and/or Stewart Guaranty have caused Plaintiffs and each of them to sustain injury and damage to their properties and financial interests in the aggregate amount in excess of $7,000,000 to be proven at trial.

154.    Stewart Information is vicariously liable to Plaintiffs and each of them as the parent corporation of Stewart Title and Stewart Guaranty for their legal obligations and liabilities in the event they fail or refuse to satisfy such obligations and liabilities.

### Twelfth Claim for Relief
(Bad Faith Claim Against the Stewart Defendants)

155.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Fifty-four (154), inclusive, above as if the same were fully rewritten herein.

156.    By failing and refusing to cover and reimburse some of Plaintiffs for their losses and damages caused by the errors, omissions and misconduct of Herrera, Avance and/or Vasquez,

knowing that Herrera, Avance and/or Vasquez had definitely committed such errors, omissions and misconduct that caused significant financial injuries and losses to certain of Plaintiffs, Stewart Title and/or Stewart Guaranty have acted in bad faith under the law.

157.    As a direct and proximate result of the bad faith failure and refusal of Stewart Title and/or Stewart Guaranty to pay and reimburse some of Plaintiffs for their losses and damages, they are liable to such Plaintiffs for the consequential damages for which they are now responsible because of their bad faith.

**Thirteenth Claim for Relief**
(Claim Against the Doma Defendants for Breach of Title Insurance Contract)

158.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Fifty-seven (157), inclusive, above as if the same were fully rewritten herein.

159.    Doma Title entered into multiple agreements to provide title insurance coverage for real estate transactions on behalf of or for the benefit of each Plaintiff in which Herrera, Avance and/or Vasquez were providing title services and escrow services requiring to close the transaction. On information and belief, such title insurance protected the customers of Herrera, Avance and/or Vasquez from damages caused by buyers, sellers and/or property owners by the errors or omissions of Herrera, Avance and/or Vasquez in their handling of the titles, mortgages and escrow services required in connection with real estate transactions.

160.    On information and belief, Doma Title had actual knowledge of, or became aware of, the errors and omissions committed by, and the fraudulent activities, including forging documents and forging signatures on documents, of Herrera, Avance and/or Vasquez in connection with their handling of the titles, mortgages and escrow services required in connection with real estate transactions for Plaintiffs and each of them.

161.    On information and belief, Doma Title has paid claims on behalf of Herrera,

Avance and/or Vasquez and has purported to succeed to the position of Herrera, Avance and/or Vasquez in such matters.  On information and belief, Doma Title has paid claims for mortgagees and other parties who have been damaged by the fraudulent activities, errors and omissions of Herrera, Avance and/or Vasquez, and have purported to succeed to the position of such mortgagees and other parties in such matters.

162.    Nevertheless, Doma Title has not paid, reimbursed or covered the damages and losses suffered by Plaintiffs as a result of the errors and omissions and fraudulent activities of Herrera, Avance and/or Vasquez.  Instead, Doma Title has falsely blamed some of the Plaintiffs and falsely accused them of committing fraud in connection with certain of the real estate transactions rather than placing the blame on Herrera, Avance and/or Vasquez as it truly and correctly should have been assigned.

163.    As a direct and proximate result of the breach of its title insurance agreements covering Plaintiffs' properties and transactions, Doma Title has caused Plaintiffs and each of them to sustain injury and damage to their properties and financial interests in the aggregate amount in excess of $7,000,000 to be proven at trial.

164.    Doma Holdings is vicariously liable to Plaintiffs and each of them as the parent corporation of Doma Title for its legal obligations and liabilities in the event it fails or refuses to satisfy such obligations and liabilities.

**Fourteenth Claim for Relief**
(Bad Faith Claim Against the Doma Defendants)

165.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Sixty-four (164), inclusive, above as if the same were fully rewritten herein.

166.    By failing and refusing to cover and reimburse some of Plaintiffs for their losses and damages caused by the errors, omissions and misconduct of Herrera, Avance and/or Vasquez,

knowing that Herrera, Avance and/or Vasquez had definitely committed such errors, omissions and misconduct that caused significant financial injuries and losses to certain of Plaintiffs, Doma Title has acted in bad faith under the law.

167.    As a direct and proximate result of the bad faith failure and refusal of Doma Title to pay and reimburse some of Plaintiffs for their losses and damages, it is liable to such Plaintiffs for the consequential damages for which it is now responsible because of its bad faith.

**Fifteenth Claim for Relief**
(Clinton Fence's and the Trust's Claims for Rescission
and Restitution Against Stewart Guaranty)

168.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in Paragraphs One (1) through One Hundred Sixty-seven (167), inclusive, above as if the same were fully rewritten herein.

169.    Stewart Guaranty purports to be the holder of a promissory note and mortgage supposedly executed in or about August 2016 by Clinton Fence and supposedly secured by two properties allegedly owned by the Trust in or about August 2016.  Stewart Guaranty claims that the Trust sold the property at 11850 Tulip Hill Place, Charlotte Hall, Maryland, in 2016 and sold the property at 2400 Old Washington Road, Waldorf, Maryland, in 2019.

170.    Clinton Fence states that it had nothing whatever to do with the underlying loan from Community Bank and the promissory note given to the Bank, and therefore challenges the legitimacy of Stewart Guaranty's assertion that it has properly and lawfully assumed the position of Community Bank.  Clinton Fence states that Herrera, Avance and/or Vasquez falsely and fraudulently stated or assigned the note to Clinton Fence when Clinton Fence was not involved in any way in the original loan.

171.    Furthermore, Stewart Guaranty knows that Herrera, Avance and/or Vasquez were supposed to pay Community Bank the entire amount due under the note and satisfy and release the

mortgage on the properties when they were sold. Stewart Guaranty also knows that Herrera, Avance and/or Vasquez failed to pay and satisfy the note and mortgage, but instead diverted, converted, misappropriated and absconded with the funds that should have been so used.

172.    Nevertheless, despite such knowledge that its insured title and escrow agent is the reason the note and mortgage have not been paid, Stewart Guaranty continues to demand that Clinton Fence pay the entire balance of a note and mortgage for which Clinton Fence actually has no responsibility.

173.    As a direct and proximate result of Stewart Guaranty's demand that Clinton Fence make full payment, under circumstances in which Stewart Guaranty knows or reasonably should know that Clinton Fence was never involved until Herrera, Avance and/or Vasquez wrongfully and without consideration falsely obligated Clinton Fence to the loan and mortgage documents, the Court should order the rescission of the note and mortgage as it applies to Clinton Fence and the Trust and should order restitution to Clinton Fence of all amounts of money it has paid to Stewart Guaranty to date on its illegitimate claim of entitlement to such payments.

WHEREFORE, Plaintiffs, Monster Investments, Inc. Klar Inc., Loressa Dawn Robinson, Donald I. Bernard, Clinton Fence Co., Inc., L.D. Jay, Inc., J. Adams Properties LLC, J. Adams Living Trust dated January 8, 2008, and the Estate of Wesley J. Adams, and each of them, hereby demand judgment against Defendants, Avance Title, LLC, Soledad Herrera, Arturo Vasquez, Scott R. Davis, Stewart Title Company, Stewart Title Guaranty Company, Stewart Information Services Corporation, Doma Title Insurance, Inc. and Doma Holdings, Inc., and each of them, jointly and severally, for:

1.    An award of compensatory damages with respect to all Claims for Relief in an amount in excess of $7,000,000 as shown by the evidence introduced at the trial of this action.

2.    An award of punitive or exemplary damages with respect to the Second, Third,

Fourth and Fifth Claims for Relief in an amount in excess of $20,000,000 to be determined from the evidence in accordance with law.

3.     An award of treble damages with respect to the Ninth and Tenth Claims for Relief in an amount in excess of $20,000,000 to be determined from the evidence in accordance with law.

4.     An order of rescission of the note and mortgage for which Stewart Guaranty now claims to be the lawful holder and restitution of all sums Clinton Fence has paid to Stewart Guaranty to date on such false claims.

5.     Plaintiff's reasonable attorneys' fees incurred in prosecuting these claims, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, and the costs of this action, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

6.     Such other and further relief as the Court may deem just and proper.


Date:  March 14, 2024                        /s/ *Eric H. Zagrans*
                                                         Eric H. Zagrans (Bar No. 28690)
                                                         ZAGRANS LAW FIRM LLC
                                                         1640 Roundwyck Lane
                                                         Columbus, Ohio 43065
                                                         (440) 452-7100 (telephone)
                                                         (866) 261-2008 (facsimile)
                                                         eric@zagrans.com (e-mail)

                                                         Michael L. Adams (Bar No. 18892)
                                                         SASSCER, CLAGETT & BUCHER
                                                         5407 Water Street, Suite 101
                                                         Upper Marlboro, MD 20772
                                                         (301) 627-5500 (telephone)
                                                         (301) 627-4156 (facsimile)
                                                         madams@scblawyers.com (e-mail)

                                                         *Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby respectfully request a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

/s/ *Eric H. Zagrans*

Eric H. Zagrans