### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

MONSTER INVESTMENTS, INC., et al.,

*Plaintiffs*,

v.

Action No. 24-CV-0767-ABA

AVANCE TITLE, LLC, et al,

*Defendants*

### MEMORANDUM OPINION

Plaintiffs Monster Investments, Inc. ("Monster"), Klar Inc. ("Klar"), Lorressa Robinson ("Robinson"), Donald Bernard ("Bernard"), Clinton Fence Company, Inc. ("Clinton Fence"), L.D. Jay, Inc. ("L.D. Jay"), J. Adams Properties, LLC ("Adams Properties"), the J. Adams Living Trust ("Adams Trust"), and the Estate of Wesley J. Adams ("Adams Estate") (together, "Plaintiffs") filed a complaint alleging various causes of action arising from a series of real estate investments. Before the Court are four motions to dismiss all counts of the complaint filed by the remaining groups of Defendants: (1) Stewart Title Guarantee Company, Inc. ("Stewart"), (2) Doma Title Insurance, Inc. ("Doma") and Doma Holdings, Inc. ("Doma Holdings"), (3) Scott Davis ("Davis"), and (4) Avance Title, LLC ("Avance"), Arturo Vasquez ("Vasquez"), and Soledad Herrra ("Herrera") (the last three together, "the Avance Defendants"). Also pending is Plaintiffs' motion for leave to file an amended complaint. The Court will grant the motions to dismiss and deny the motion for leave to file an amended complaint. Because of the circumstances of this case described below, and evident futility of additional amendments, the dismissal will be with prejudice.

## FACTUAL HISTORY[1]

Plaintiffs' allegations arise from a series of real estate transactions that occurred between 2018 and 2021 for which Plaintiffs utilized the services of the Avance Defendants. In short, Plaintiffs allege that the Defendants, but primarily the Avance Defendants, served as escrow agents and/or real estate brokers, and misappropriated and misused funds used in these transactions.

Plaintiffs Monster and Klar are corporations that "owned many of the real properties that are the subjects of [Plaintiffs'] claims." ECF Nos. 1 ¶¶ 9-10; 63-1 ¶ 9-10. Plaintiffs Robinson and Bernard were officers of Monster and Klar. ECF Nos. 1 ¶¶ 11-12; 63-1 ¶¶ 11-12. Plaintiffs Adams (who died in 2020 and is represented by the Adams Estate) and the Adams Trust also "owned many of the real properties that are the subjects of the claims alleged in this Complaint." ECF Nos. 1 ¶¶ 16-17; 63-1 ¶¶ 16-17. Plaintiff L.D. Jay was owned by Robinson and Adams while Adams Properties was owned by Adams and is now owned by the Adams Estate. ECF Nos. 1 ¶¶ 14-15; 63-1 ¶¶ 14-15. Both entities "owned many of the real properties that are the subjects of the claims alleged in this Complaint." *Id.* Adams owned and ran Clinton Fence until his death. ECF Nos. 1 ¶ 13; 63-1 ¶ 13. Robinson is currently the President and CEO of Clinton Fence. *Id.*

Defendant Avance was owned by Herrera and Vasquez and was in the business of facilitating real estate transactions, including many for Plaintiffs. ECF Nos. 1 ¶¶ 18-20;

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Throughout this memorandum, the Court cites to the original complaint (ECF No. 1) and the red-lined version of the proposed amended complaint (ECF No. 63-1).

63-1 ¶¶ 18-20. Defendant Davis allegedly brokered real estate transactions for Monster and the Avance Defendants in 2020 and 2021. ECF Nos. 1 ¶¶ 21; 63-1 ¶¶ 21. More specifically, Plaintiffs allege that Davis was engaged to broker a loan "from Attorney Angelo Russo of Fairview Park, Ohio, to Monster" for more than $4 million, but instead of closing on that loan, Davis "exchanged it for a purported loan of $2.5 million supposedly from NHN Properties, LLC . . . to Monster, Robinson and Bernard." ECF No. 1 ¶ 21; *see also* ECF No. 63-1 ¶ 21. Monster, Robinson, and Bernard allege that they "never knew about the supposed NHN Properties loan" and "never agreed to it or to its terms." ECF No. 1 ¶ 21.; *see also* ECF No. 63-1 ¶ 22. Plaintiffs allege that the Avance Defendants took the loan money and did not use it for Monster's benefit. ECF No. 1 ¶ 21; *see also* ECF No. 63-1 ¶ 23. Plaintiffs also allege that Davis was paid a $500,000 commission (or as Plaintiffs call it elsewhere, a "kickback") to broker the loan. ECF No. 1 ¶ 21; *see also* ECF No. 63-1 ¶ 24.

Stewart and Doma allegedly provided title insurance in connection with some of the transactions described in the complaint. ECF No. 1 ¶¶ 148-49, 159; *see also* ECF No. 63-1 ¶¶ 156-57, 170-71. Plaintiffs allege that while Stewart and Doma have paid claims on behalf of the Avance Defendants "and other parties who have been damaged by the fraudulent activities, errors and omissions of" the Avance Defendants, Stewart and Doma "have not paid, reimbursed or covered the damages and losses suffered by Plaintiffs as a result of the errors and omissions and fraudulent activities of" the Avance Defendants. ECF No. 1 ¶¶ 151-52, 161-62; *see also* ECF No. 63-1 ¶¶ 163. Doma is alleged to be "the wholly owned subsidiary of Doma Holdings." ECF No. 1 ¶¶ 25-26; *see also* ECF No. 63-1 ¶¶ 27-28.

Plaintiffs allege that beginning in 2018, Adams engaged the Avance Defendants "for title work and escrow services for real estate transactions into which he and his business partner, Robinson, entered on behalf of themselves or their respective investment companies and entities" and that the Plaintiffs "came to rely on" the Avance Defendants for all such work. ECF No. 1 ¶ 27; *see also* ECF No. 63-1 ¶ 29. These transactions included facilitating construction of a new building for Clinton Fence in 2018 that was to be financed by other properties owned by Plaintiffs. ECF No. 1 ¶ 28; *see also* ECF No. 63-1 ¶ 30. Plaintiffs allege that the Avance Defendants also facilitated many other property transfers between the Plaintiffs and others between 2019 and 2021. ECF No. 1 ¶¶ 28-30; *see also* ECF No. 63-1 ¶¶ 30-32. Plaintiffs allege that instead of properly handling these transactions, the Avance Defendants "misused, misapplied, misappropriated, misaccounted for, diverted, converted, and comingled funds belonging to all Plaintiffs that should have been held in escrow for their benefit or paid to third parties to satisfy loans and mortgage liens on Plaintiffs' properties involved in each respective transaction" and that those loans and liens were not satisfied. ECF No. 1 ¶¶ 32, 33-62; *see also* ECF No. 63-1 ¶¶ 34, 36-69.

Plaintiffs also contend that Stewart claims to be mortgagee of one property that was involved in funding the new Clinton Fence building and has been "demanding and collecting mortgage payments from Clinton Fence" improperly. ECF No. 1 ¶ 44; *see also* ECF No. 63-1 ¶¶ 47-48. In the proposed amended complaint, Plaintiffs allege that Stewart has "no legal right or authority to claim that it" is the mortgagee for that property and that "any such entitlement is the direct and proximate result of the fraudulent activities of" the Avance Defendants. ECF No. 63-1 ¶ 48.

Plaintiffs allege they did not "discover the nature and scope of [the Avance Defendants'] conduct or the fact that they had committed these wrongful acts and omissions until in or about June and July 2021." ECF No. 1 ¶ 64; *see also* ECF No. 63-1 ¶ 72.  But they recognize that for statute of limitations purposes, they could have recognized the problems "as early as late April or May, 2021, when certain minor discrepancies in the documentation for a couple of the real estate transactions came to light." ECF No. 1 ¶ 64; *see also* ECF No. 63-1 ¶ 72.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on March 14, 2024, alleging nine counts against the Avance Defendants for breach of contract (Count 1), breach of fiduciary duties (Count 2), fraud (Count 3), fraudulent inducement (Count 4), conversion (Count 5), negligence (Count 6), negligent misrepresentation (Count 7), promissory estoppel (Count 8), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 9) and RICO conspiracy (Count 10). The complaint includes three counts against Stewart for breach of title insurance contract (Count 11), bad faith (Count 12), and "Rescission and Restitution" (Count 15), and two counts against Doma and Doma Holdings for breach of title insurance contract (Count 13) and bad faith (Count 14).[2] Finally, Plaintiffs included Davis in the two RICO claims along with the Avance Defendants (Counts 9 and 10). ECF No. 1.

The Defendants filed motions to dismiss between July 26, 2024 and September 16, 2024. *See* ECF Nos. 27, 33, 48, and 49. On August 20, 2024, the Court granted

---

[2] Plaintiffs also originally asserted claims against two entities related to Stewart: Stewart Title Company and Stewart Information Services Corporation. Plaintiffs subsequently dismissed their claims against these two Defendants. ECF Nos. 45 & 69.

Plaintiffs' requested extension to file responses to the then-pending motions to dismiss, providing Plaintiffs with an August 30, 2024 response deadline. *See* ECF Nos. 42 & 43. For the remaining motions filed after that date, Plaintiffs' responses were due on September 19, 2024 and October 1, 2024.

Plaintiffs failed to respond to any of the motions to dismiss. The Avance Defendants, Doma, and Doma Holdings filed reply briefs on October 8 and 10, 2024, noting the lack of responses from Plaintiffs. ECF Nos. 50 & 51. Then on October 23, 2024, Plaintiffs filed a motion for leave to file a surreply to the two replies briefs (despite not having filed responses to the motions); that motion for leave remains pending. ECF No. 52. The motion for leave, which does not include a separate proposed surreply, does not provide any substantive responses to any of the motions to dismiss or good cause or excusable neglect for Plaintiffs' failure to respond to the motions. Instead, the motion states that since August 16, 2024, Plaintiffs' counsel had "been working on preparing a more detailed and definite First Amended Complaint to respond to and, he believes, satisfactorily address the issues raised in the above-referenced motions filed by" the Defendants. *Id.* at 2.[3] The motion also alleges that during September 2024, Plaintiffs' counsel was busy on other matters and claims he "did not have the time and opportunity due to the press of the foregoing business to finish working on the proposed Amended Complaint in this case and to get it filed then," and that he "lost track of the response dates for the motion to dismiss of Avance Title, Herrera and Vasquez (Doc. 48) and Davis' motion to dismiss (Doc. 49) until their respective replies were filed on October 8,

---

[3] All page citations to filings correspond to the ECF pagination, which may not be identical to the pagination used by the parties.

2024 (Doc. 50) and October 10, 2024 (Doc. 51)." *Id.* In the motion, Plaintiffs requested until November 18, 2024 to file an amended complaint. *Id.* at 3.

On November 18, 2024, Plaintiffs filed the pending motion for leave to file an amended complaint. ECF No. 58. The motion provides no additional explanation for Plaintiffs' failure to previously file responses to the motions to dismiss or any discussion on why the Court should entertain the late-filed motion. *Id.* The motion also lacked a red-lined version of the proposed amended complaint, in violation of Local Rule 103.6(c), and, at 53 pages, the proposed amended complaint exceeds the 40-page limit in Local Rule 103.1(d). While Plaintiffs did move for an expanded page limit for their initial complaint, *see* ECF No. 2, they did not so move regarding their proposed amended complaint. The proposed amended complaint largely tracks the initial complaint with just a few additional details. The counts alleged against each Defendant are the same as in the original complaint with the exception that Davis has been added to the conversion claim in Count 5, *see* ECF No. 63-1 ¶¶ 109-118, removed from the RICO conspiracy claim in Count 10, *see id.* ¶¶ 149-54, and his role in the RICO claim at Count 9 has been changed from being a member of the alleged "enterprise" to having aided and abetted the alleged enterprise, which now consists only of the Avance Defendants. *See id.* ¶¶ 135-47.

Of the currently remaining Defendants, Stewart and Davis filed opposition briefs to the motion for leave to file an amended complaint. ECF Nos. 59 & 60. After prompting by the Court, Plaintiffs did file a red-lined copy of the proposed amended complaint on November 27, 2024. ECF No. 63-1. Also on November 27, 2024, and in order to give Plaintiffs every benefit of the doubt and a final opportunity to advance their claims, the Court ordered Plaintiffs to

> file a consolidated brief in response to all pending motions to
> dismiss. Insofar as Plaintiffs contend that any argument(s)
> made by Defendants in those motions has been cured by the
> proposed amended complaint (ECF No. 58-2; *see also* ECF
> No. 63-1 (redline)), Plaintiffs shall so specify and explain why
> the amendment cures any deficiency and thus why
> amendment would not be futile.

ECF No. 64 at 2. This order did not excuse Plaintiffs' failure to previously file responses

to the motions to dismiss, their filing of the untimely motion for leave to file an

amended complaint, or the lack of adequate explanation for their deficiencies. Pursuant

to the order, Plaintiffs filed their "Consolidated Brief in Response to All Pending

Motions to Dismiss and Reply in Support of Their Motion for Leave to File Their

Amended Complaint" on December 13, 2024. ECF No. 66. Defendants then filed reply

briefs. ECF Nos. 70, 74, 75, & 77.

In addressing the pending motions, the Court will consider the arguments raised

in the motions to dismiss and whether, and to what extent, Plaintiffs have addressed

those arguments in their response and provided citations to the supportive paragraphs

in the proposed amended complaint.

## STANDARDS OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even

assuming the truth of the alleged facts, the complaint fails "to state a claim upon which

relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P.

12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual

allegations to state a facially plausible claim for relief. *Id*. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the

Court "must accept as true all of the factual allegations contained in the complaint and

draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

Leave to amend a complaint should "be freely given when justice so requires,"

Fed. R. Civ. P. 15(a), but a court "may deny leave to amend for reasons 'such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser v.*

*Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962)).

## DISCUSSION

### A.    Stewart's and Doma's Motions to Dismiss

Plaintiffs have alleged claims of breach of title insurance contract and bad faith

against both Stewart and Doma, as well as a "Recission and Restitution" claim against

Stewart and a vicarious liability claim against Doma Holdings.

### 1.    Breach of Title Insurance Contract (Counts 11 & 13)

Plaintiffs allege that Stewart and Doma breached title insurance policies issued to

various Plaintiffs by failing to pay for the alleged damages caused by the Avance

Defendants' actions. In their motions to dismiss, Stewart and Doma argue that

Plaintiffs' claims are insufficient because, among other things, they fail to identify the

policies at issue, the insureds, the relevant properties, any provision of the policies, and

the nature of the title defects or policy provisions allegedly breached, and whether the insured told Stewart and Doma about the alleged title defects and whether Stewart and Doma refused to cure the defects. ECF Nos. 27-1 at 6-8; 33-1 at 4-6.

In their response, Plaintiffs argue that the proposed amended complaint cures any defects in the original complaint by identifying the addresses of the properties for which they allege Stewart and Doma issued title insurance and the individual Plaintiffs who owned those properties. ECF No. 66 at 2-4, 9; *see* ECF No. 63-1 ¶¶ 157, 171. Plaintiffs also allege that Stewart and Doma knew about the Avance Defendants' alleged fraudulent actions. *See* ECF No. 63-1 ¶¶ 158-59, 172-73. Plaintiffs contend that they do not have the actual title insurance policies, however, because they were never given copies. ECF No. 66 at 5-6, 12.

"The predominant view today is that title insurance—at least as to its first-party aspect—is a contract of indemnity, and not a contract of guaranty or warranty." *Stewart Title Guar. Co. v. West*, 110 Md. App. 114, 128 (1996). Thus, "a title insurer does not 'guarantee' the status of the grantor's title" but instead "agrees to reimburse the insured for loss or damage sustained as a result of title problems, as long as coverage for the damages incurred is not excluded from the policy." *Id.* at 129. As a result, under Maryland law, a title insurance policy is not breached "simply because title is defective on the day the policy is issued," but instead, "is breached only *after* notice of an alleged defect in title is tendered to the insurer and the insurer fails to cure the defect or obtain title within a reasonable time thereafter." *Id.* at 131-32 (quoting *First Fed. Sav. & Loan Ass'n of Fargo, N.D. v. Transamerica Title Ins. Co.*, 19 F.3d 528, 531 (10th Cir. 1994)).

Here, Plaintiffs have failed in their initial and proposed amended complaints to allege any relevant terms of the policies, any title defects, that they tendered any issues

to Stewart and Doma, or that Stewart and Doma refused to cure the defects. "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)). Without relevant definite factual allegations, the claims of breach of title insurance contracts against Stewart and Doma in Counts 11 and 13 must be dismissed.

### 2.    Bad Faith (Counts 12 & 14)

Plaintiffs allege that Stewart and Doma acted in bad faith by failing to pay Plaintiffs for unspecified breaches of the alleged title insurance contracts while, at the same time, paying other individuals' damages. Stewart and Doma argue that the same deficiencies in Plaintiffs' allegations that doom the breach of contract claims also doom these claims, including that Plaintiffs fail to allege that they made any claims to Stewart and Doma that were denied. ECF Nos. 27-1 at 8; 33-1 at 7-8. The Court agrees with Stewart and Doma that Plaintiffs' vague assertions of bad faith cannot survive dismissal given, among other things, their failure to allege that Stewart and Doma refused to ameliorate any specific title defects.

Stewart and Doma also argue that an insured cannot bring a bad faith tort claim based on a failure to pay on an insurance contract under Maryland law. ECF Nos. 27-1 at 8; 74 at 8. "It is well-settled under Maryland law that an insured claiming that an insurer has failed to pay policy benefits may only pursue contract remedies." *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*, 265 F. Supp. 3d 633, 638 (D. Md. 2017)

(citing cases). "An insured, therefore, may not bring a tort claim for bad faith based simply on an insurer's failure to pay a claim." *Id.* at 638-39.

Plaintiffs agree with this recitation of the law but suggest, without relevant citation, that it should not apply because they have alleged that Stewart and Doma were aware of the fraud perpetrated by the Avance Defendants. ECF No. 66 at 6-7. Plaintiffs also argue without any real analysis that the claims against Stewart should proceed under Texas law (which they assert recognizes such bad faith claims) because Stewart is a Texas corporation, even though they have alleged that all relevant actions took place in Maryland. *Id.* at 7-8.

To the extent Plaintiffs have a remedy against Stewart and Doma under Maryland law, it would be contractual, not based in tort (such as a bad faith claim). *Bierman Fam. Farm*, 265 F. Supp. 3d at 638. Moreover, there is no basis to apply Texas law to the claims against Stewart. Choice of substantive law in a diversity jurisdiction case is controlled by the choice of law rules of the state where the action was filed, here Maryland. *Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 728 (D. Md. 2018). Given that the alleged title insurance contracts were issued in Maryland and the alleged injuries occurred in Maryland, Maryland law applies to both the breach of contract and bad faith claims. *See RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605 (1997) and *Fluxo-Cane Overseas Ltd. v. E.D. & F. Man Sugar Inc.*, 599 F. Supp. 2d 639, 642 (D.Md. 2009)). For these reasons, Counts 12 and 14, alleging bad faith by Stewart and Doma, must be dismissed.

### 3. "Rescission and Restitution" (Count 15)

In Count 15, Plaintiff Clinton Fence sues Stewart for "Rescission and Restitution." ECF No. 1 ¶¶ 168-173; *see also* ECF No. 63-1 ¶¶ 184-89. This claim arises out of Plaintiffs' allegations that Stewart "purports to be the holder of a promissory note and mortgage supposedly executed in or about August 2016 by Clinton Fence and supposedly secured by two properties allegedly owned by the [Adams] Trust in or about August 2016." ECF No. 1 ¶ 169; *see also* ECF No. 63-1 ¶ 185. Clinton Fence asserts that "it had nothing whatever to do with the underlying loan from Community Bank" (that was secured with the property at issue) and it "challenges the legitimacy of [Stewart's] assertion that it has properly and lawfully assumed the position of Community Bank" and became the mortgagee. ECF No. 1 ¶ 170; *see also* ECF No. 63-1 ¶ 186. Clinton Fence asserts that Stewart knew the Avance Defendants "were supposed to pay Community Bank the entire amount due" on the mortgaged property, and they failed to do so, so Clinton Fence asserts that Stewart should not be attempting to collect mortgage payments from it on that loan. ECF No. 1 ¶ 171; *see also* ECF No. 63-1 ¶ 187.

Stewart contends that Count 15 does not state a claim on which relief can be granted because, among other things, the allegations regarding the relevant loan are inconsistent and therefore, even drawing all reasonable inferences in Clinton Fence's favor, the allegations are insufficient to state a claim. ECF No. 27-1 at 8-11. For example, Stewart notes that the complaint (and proposed amended complaint) assert both that Clinton Fence had nothing to do with the loan but yet, for some reason, made payments on the loan and then later blamed the Avance Defendants for failing to pay off the remainder of the loan in 2018. *Id.*; *compare* ECF No. 1 ¶ 169; ECF No. 63-1 ¶ 186 ("Clinton Fence states that it had nothing whatever to do with the underlying loan . . . .")

*with* ECF No. 1 ¶ 173, ECF No. 63-1 ¶ 189 (asking the Court to "order restitution to Clinton Fence of all amounts of money it has paid to [Stewart] to date on its illegitimate claim of entitlement to such payments") *and* ECF No. 1 ¶ 41, ECF No. 63-1 ¶ 44 (alleging that the Avance Defendants "failed to pay off a mortgage lien" on the relevant property).

Stewart also argues that because Plaintiffs allege that the loan does not belong to Clinton Fence, there are no allegations establishing a contract between them that can be rescinded. *See Wiseman v. First Mariner Bank*, 2013 WL 5375248, *19 (D. Md. Sept. 23, 2013) ("To be sure, a complete stranger to the transaction would lack standing to seek rescission."). Additionally, Stewart argues that Plaintiffs have not alleged facts that would support recission of a contract because they have also failed to allege that they returned any loan proceeds or attempted to rescind the loan promptly (and instead Plaintiffs allege that Clinton Fence paid the loan between 2016 and 2018). *See id*. at *16 (listing the elements of a claim for recission, including that the plaintiff was induced into the contract due to fraud or mistake, returned the consideration, and exercised the right to rescind promptly). Finally, Stewart contends that restitution is not a cognizable, standalone cause of action.

Plaintiffs acknowledge in their response that "Stewart Title alleged that the rescission claim was contradictory and nonsensical," but Plaintiffs do not otherwise attempt to refute or even respond to Stewart's arguments. ECF No. 66 at 2. The Court can only view the acknowledgment of the arguments but refusal to address them as a concession. *See Parker*, 179 F. Supp. 3d at 515 ("Because Plaintiff failed to oppose either of the pending motions to dismiss, he has effectively conceded the dispositive arguments presented in those motions, and for that reason alone his Complaint is susceptible to dismissal."); *see also Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)

(concluding that the district court "was entitled . . . to rule on the [defendant's] motion and dismiss [plaintiff's] suit on the uncontroverted bases asserted therein" after Plaintiff failed to file a response). Additionally, however, the Court holds that to the extent this claim can be considered a cause of action, it fails because Plaintiffs' confusing allegations do not allege the necessary elements for recission of a contract. Thus, Count 15 will be dismissed.

### 4.    Vicarious Liability

Finally, Plaintiffs' only allegation against Doma Holdings is that it "is vicariously liable to Plaintiffs . . . as the parent corporation of Doma Title for its legal obligations and liabilities." ECF No 1 ¶ 164; *see also* ECF No. 63-1 ¶ 180, 182. Plaintiffs have not attempted to allege facts in either version of the complaint that would make Doma Holdings vicariously liable for the actions of its subsidiary by establishing, for example, any of the factors necessary to pierce the corporate veil. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). Thus, the claims against Doma Holdings must be dismissed.

### B.    Davis's Motion to Dismiss

In the initial complaint, Plaintiffs included Davis in Counts 9 and 10 for RICO violations and conspiracy to commit RICO violations. In the proposed amended complaint, Plaintiffs have removed Davis from Count 10, and changed his role in Count 9 from an alleged member of the criminal enterprise to an alleged aider and abetter. ECF No. 63-1 at ¶¶ 134-154. Plaintiffs also added Davis to the conversion claim in Count

5. *Id.* at ¶¶ 107-118. The Court will analyze the claims asserted in the proposed amended complaint with the understanding that Plaintiffs have abandoned any other claims against Davis and contend that these new allegations are their best case against Davis.

As stated, Plaintiffs allege that Davis was engaged to broker a multi-million-dollar loan from an investor named Angelo Russo to Monster that was to be used to purchase a property and pay off an existing lien on that property. ECF No. 1 ¶¶ 21, 56; *see also* ECF No. 63-1 ¶¶ 21-23, 60-61. Plaintiffs allege that the first loan funds were transferred to the Avance Defendants through Davis to pay off the lien, but that the Avance Defendants failed to use the money for that purpose. ECF No. 1 ¶¶ 21, 56; *see also* ECF No. 63-1 ¶¶ 21-23, 60-61. Plaintiffs further allege that "somehow" Davis and the Avance Defendants substituted in a new loan from NHN Properties to Monster instead of the loan from Russo without Plaintiffs' knowledge or permission. ECF No. 1 ¶¶ 21, 56; *see also* ECF No. 63-1 ¶¶ 21-22, 60-61. Specifically, in the proposed amended complaint, Plaintiffs allege that "NHN Properties was an existing or former client of Attorney Russo, and Davis somehow switched his role and acted as the 'broker' for the NHN Properties loan instead." ECF No. 63-1 ¶ 21. Plaintiffs also allege that Davis was paid a $500,000 commission (which Plaintiffs characterize as a "kickback") to broker the loan. ECF No. 1 ¶ 21; *see also* ECF No. 63-1 ¶ 24.

Plaintiffs' response to Davis's twenty-one-page brief in support of his motion to dismiss and eight-page opposition to the motion for leave to file an amended complaint amounts to four sentences:

> Plaintiffs have significantly amended the allegations against Davis in the Ninth Claim for Relief from alleging that he was a co-conspirator in the alleged RICO conspiracy with Avance Title, Herrera and Vasquez to alleging that he aided and

> abetted Avance Title's, Herrera's and Vasquez's conduct of the
> affairs of the RICO enterprise through a pattern of
> racketeering activity. (Doc. 58-2, ¶ 135-147.) Plaintiffs'
> amended allegations against Davis satisfy all legal
> requirements for stating a claim for aiding and abetting
> liability under the RICO statutes.

ECF No. 66 at 17. This response is entirely conclusory and fails to respond to Davis's

arguments or the Court's direction to "specify and explain why the amendment cures

any deficiency and thus why amendment would not be futile." ECF No. 64 at 2.

Moreover, and regarding Plaintiffs' aiding and abetting claim against Davis in

Count 9, 18 U.S.C. § 1962 does not provide a cause of action for aiding and abetting in

connection with a RICO claim. *In re Am. Honda Motor Co., Inc. Dealerships Rels.*

*Litig.*, 958 F. Supp. 1045, 1058 (D. Md. 1997) ("[I]t is becoming conventional wisdom

that aiding and abetting liability under § 1962(c) does not survive the Supreme Court's

ruling in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164

(1994)."); *see also Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839,

840 (3d Cir. 2000) ("[B]ecause RICO's statutory text does not provide for a private

cause of action for aiding and abetting and 18 U.S.C. § 2 cannot be used to imply this

private right, no such cause of action exists under RICO."). Thus, Plaintiffs' aiding and

abetting RICO claim in Count 9 against Davis fails.

Even if that were not the case, the allegations against Davis in Count 9 lack the

requisite specificity to support his participation in a RICO scheme. *See, e.g. Bailey v.*

*Atl. Auto. Corp.*, 992 F. Supp. 2d 560, 584 (D. Md. 2014) (providing that a "plaintiff

must plead 'circumstances of the fraudulent acts that form the alleged pattern of

racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).'")

(quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)). Plaintiffs

essentially argue that, for payment, Davis brokered a loan and the Avance Defendants misused the loan money, and that Davis helped switch the source of at least some of the financing. But Plaintiffs do not allege whether or how that led to an injury or what Davis did to allegedly aid and abet in the context of the RICO claim. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (providing that to state a RICO claim, a plaintiff must show that the defendant's alleged conduct was the proximate cause of the plaintiff's injuries). For these reasons, Count 9 against Davis must be dismissed.

Regarding conversion, Davis opposed his addition to this claim in his response to the motion for leave to file an amended complaint. ECF No. 60 at 3-5. Plaintiffs in their response to the motions to dismiss and reply in support of their motion for leave to file an amended complaint did not address Davis's arguments. ECF No. 66 at 17. Having been given the opportunity to address these arguments, but having failed to do so, the Court concludes Plaintiffs have waived this claim. *See Pueschel*, 369 F.3d at 354; *Parker*, 179 F. Supp. 3d at 515. Regardless, there are no facts in either version of the complaint alleging that Davis took property belonging to Plaintiffs that could support this claim. The only funds Plaintiffs allege Davis obtained was from the Avance Defendants for brokering the loan. There are no allegations that that money belonged to Plaintiffs. *See Lasater v. Guttmann*, 194 Md. App. 431, 446 (2010) ("[Conversion] is defined as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'") (quoting *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 155 (2002)). Thus, Count 5 as it pertains to Davis also fails.

C.    **The Avance Defendants' Motion to Dismiss**

In both versions of the complaint, Plaintiffs assert against the Avance Defendants claims for breach of contract (Count 1), breach of fiduciary duties (Count 2), fraud (Count 3), fraudulent inducement (Count 4), conversion (Count 5), negligence (Count 6), negligent misrepresentation (Count 7), promissory estoppel (Count 8), RICO violations (Count 9), and RICO conspiracy (Count 10). The Avance Defendants have moved to dismiss all counts against them based on a number of theories in their twenty-five-page motion. For example, the Avance Defendants assert a statute of limitations defense and argue that Plaintiffs' fraud-based claims do not meet the heightened pleading standard of Rule 9(b), that the intra-corporate immunity doctrine bars Plaintiffs' RICO conspiracy claim, and that Plaintiffs' claims fail because of their own unclean hands. ECF No. 48-1 at 7-13. The Avance Defendants also argue as to each count why Plaintiffs have failed to allege sufficient facts to state a plausible claim against them. *Id.* at 13-25. These arguments are reiterated and updated in light of the proposed amended complaint in the Avance Defendants' reply brief. ECF No. 77 at 4-5, 6-7.

In the three-and-a-half pages Plaintiffs devote to the Avance Defendants' arguments, they primarily address the timeliness of their complaint and intra-corporate immunity. ECF No. 66 at 13-17. Plaintiffs address only in a very cursory fashion the Avance Defendants' arguments regarding fraud pleading standards and the sufficiency of the pleadings as to each count. *Id.* at 15. Plaintiffs do not address the Avance Defendants' unclean hands arguments at all.

The Court will address these arguments below, with the exception of timeliness and unclean hands. Determining when Plaintiffs should have known of the allegations in the complaint cannot be resolved on these pleadings. And the defense of unclean

hands is only appropriate when equitable relief is sought and generally cannot be decided at the motion to dismiss stage. *See Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (providing that "[a] motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding . . . the applicability of defenses"); *Marsh v. Curran*, 362 F. Supp. 3d 320, 326 (E.D. Va. 2019) (providing that "[u]nclean hands is an equitable defense and "[m]otions to dismiss under Rule 12(b)(6) do not resolve the applicability of defenses") (citing *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 388 (4th Cir. 1982) and *Martin*, 980 F.2d at 952); *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 951 F. Supp. 1233, 1234-35 (M.D.N.C. 1996) ("The defense of unclean hands is applicable only when the plaintiff seeks an equitable remedy.").

As discussed above, Plaintiffs essentially concede that their original compliant was inadequate: instead of addressing Defendants' arguments as to that complaint, they rely solely on their proposed amended complaint, arguing that the amended complaint cures any deficiencies. As discussed below, however, Plaintiffs have failed to show how the proposed amended complaint cures the deficiencies in the original complaint or why the amendments would not be futile, as ordered by this Court. ECF No. 64 at 2.

Regarding the breach of contract claims, all parties agree that any contracts between Plaintiffs and Advance were oral rather than in writing. ECF No. 1 ¶ 67 ("Each Plaintiff entered into an oral contract with Herrera, Avance and Vasquez in consideration of their handling all of Plaintiffs' real estate transactions"), ¶ 68 ("Herrera, Avance and/or Vasquez have breached their oral contract with each Plaintiff"); *see also* ECF No. 63-1 ¶¶ 75, 77. In their motion to dismiss, the Avance Defendants first contend that any contracts that existed were between various Plaintiffs and Avance, not Herrera and Vasquez, who Plaintiffs allege are each "an owner,

member, principal, officer, and/or employee of Avance" rather than parties independent from Avance. ECF No. 1 ¶¶ 19-20; *see also* ECF No. 63-1 ¶¶ 19-20. The Avance Defendants also contend that "Plaintiffs fail to allege facts with certainty and definiteness [showing] specific contractual obligations Avance owed and to whom they ran." ECF No. 48-1 at 15. The Avance Defendants argue that instead, Plaintiffs merely list all possible general obligations of title and escrow agents and assert that the Avance Defendants breached all of them. *See* ECF No. 1 ¶ 68; *see also* ECF No. 63-1 ¶ 77. The Avance Defendants continue that this lack of "certainty and definiteness leaves Avance Title guessing which contractual obligations it allegedly breached, if any, in performing its work." ECF No. 48-1 at 15. The Avance Defendants also allege that Plaintiffs have failed to identify any specific terms of the contracts, including consideration.

Regarding the breach of fiduciary duty claim, the Avance Defendants argue that Plaintiffs have failed to identify an independent basis for the claims separate from an escrow agent's contractual duties. *See Roman v. Sage Title Grp., LLC*, 229 Md. App. 601, 613 (2016), aff'd, 455 Md. 188 (2017) ("[E]scrow agents owe their depositors a fiduciary duty to disburse the deposits according to the terms of the escrow agreement.") (quoting *Addie v. Kjaer*, No. CIVIL 2004-135, 2009 WL 482497, at *4 (D.V.I. Feb. 23, 2009)).

Regarding fraud and fraudulent inducement, the Avance Defendants argue that the allegations lack the particularity required by Rule 9(b) and fail to identify the specific misrepresentations that were made or that those misrepresentations caused Plaintiffs' alleged losses. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) ("To satisfy Rule 9(b),

a plaintiff must plead 'the time, place, and contents of the false representations, as well

as the identity of the person making the misrepresentation and what he obtained

thereby.'") (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784

(4th Cir. 1999)). More specifically, the Avance Defendants argue that while Plaintiffs

allege that the Avance Defendants made misrepresentations about the funds associated

with the real estate transactions and misrepresented material facts to induce a

continued relationship, Plaintiffs fail to "identify what those misrepresentations were or

that they induced Plaintiffs to transact business with Avance Title." ECF No. 48-1 at 17

(citing ECF No. 1 ¶¶ 82, 84, 90); *see also* ECF 63-1 ¶¶ 91, 93. Likewise, the Advance

Defendants argue that Plaintiffs have failed to adequately allege that any alleged

misrepresentations proximately caused their losses. For example, the Avance

Defendants argue that "Plaintiffs make conclusory allegations about their losses and the

Avance Defendants' conduct. Plaintiffs do not allege specific misrepresentations that

they relied on that caused the losses." ECF No. 48-1 at 18.

Regarding conversion, the Avance Defendants allege that "Plaintiffs fail to allege

sufficient facts establishing the Avance Defendants' intent to permanently deprive

Plaintiffs of funds associated with the real estate transactions" or that they "redirected

funds for their own personal use and benefit." ECF No. 48-1 at 19. The Avance

Defendants argue that "Plaintiffs, in conclusory fashion, allege that the Avance

Defendants converted funds that were part of the real estate transactions without

providing further detail about where exactly Avance Title should have directed the

funds." *Id.* (citing ECF No. 1 ¶¶ 61–63); *see also* ECF No. 63-1 ¶¶ 68-70.

Regarding negligence and negligent misrepresentation, the Avance Defendants

argue that Plaintiffs have failed to "show an identifiable duty of care that the defendant

owed independent of contract." ECF No. 48-1 at 20 (citing *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 610 (2017)). Regarding the misrepresentation claim specifically, the Avance Defendants argue that "[a] court will not recognize a negligent misrepresentation claim premised on a breach of contractual obligation 'when the contract does not provide for the bringing of such a claim and the parties are equally sophisticated.'" *Id.* at 21. (quoting *Mowbray v. Zumot*, 533 F. Supp. 2d 554, 561 (D. Md. 2008)). The Advance Defendants assert that the allegations in the complaints clearly show all parties were sophisticated in real estate matters. *Id.*

Finally, the Avance Defendants assert that the promissory estoppel claim should be dismissed because (1) a "contractual relationship only, if anything, existed between Plaintiff Monster Investments and Defendant Avance Title" (foreclosing promissory estoppel between those parties) and (2) Plaintiffs "fail to show what promises the Avance Defendants made to" the other Plaintiffs. ECF No. 48-1 at 23; *see* ECF No. 1 ¶¶ 27-31; ECF No. 63-1 ¶¶ 29-33.

Plaintiffs' entire argument regarding the adequacy of the allegations for each claim discussed above is as follows:

> [T]he proposed Amended Complaint alleges sufficient facts to state cognizable claims for breach of contract, negligence, fraud, fraud in the inducement, breach of fiduciary duty, and conversion. These allegations surpass the particularity required by Civ. R. 9(b) for fraud-based claims. There are no further particulars Plaintiffs can allege at this point beyond what is set forth in the proposed Amended Complaint without obtaining discovery from Avance, Herrera and Vasquez regarding these matters.

ECF No. 66 at 15. These three sentences do not even attempt to address the Avance Defendants' arguments on the merits of these claims or explain how specific paragraphs in the proposed amended complaint "cure[] any deficiency and thus [explain] why amendment would not be futile." ECF No. 64 at 2.

Regarding the merits of the RICO claims, the Avance Defendants contend that Plaintiffs' allegations are conclusory and they have failed "to allege sufficient facts establishing that the Avance Defendants engaged in predicate offenses" such as mail and wire fraud or to "identify a specific scheme among the Avance Defendants to defraud them." ECF No. 48-1 at 23-24. Because Plaintiffs' RICO claims are based on fraud, the allegations must meet the heightened pleading standard of Rule 9(b). *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 586 (D. Md. 2014) (citing *Harrison*, 176 F.3d at 783). Moreover, the Fourth Circuit has instructed that courts not "lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

Plaintiffs' response regarding the merits of the RICO claims is also conclusory, stating only as follows:

> [T]he detailed allegations set forth throughout the proposed Amended Complaint are more than sufficient to establish all of the elements of a civil RICO claim pursuant to 18 U.S.C. 1962(c) as well as the predicate offenses of mail fraud and wire fraud in violation of 18 U.S.C. 1341 and 1343. *See, e.g.*, Doc. 58-2, ¶ 135-144, and the detailed descriptions of the fraudulent acts and omissions that Avance Title, Herrera and/or Vasquez engaged in through the U.S. mails and by telephone, fax transmissions, and other electronic means throughout the Amended Complaint.

ECF No. 66 at 15. A comparison of paragraphs 135 to 144 of the proposed amended complaint shows no substantial changes from the original complaint except for one

additional section of boilerplate at paragraph 144. *Compare* ECF No. 1 ¶¶ 125-37 *with* ECF No. 63-1 ¶¶ 135-44. The Court agrees that neither version of the complaint adequately alleges a RICO or RICO conspiracy claim, especially given the heightened pleading standard.

Plaintiffs also have failed to allege facts stating a claim for RICO conspiracy under 18 U.S.C. § 1962(d) (count 10) because the alleged conspiracy as stated in the proposed amended complaint involves only Avance and two of its principals, Herrara and Vasquez. Under the intra-corporate conspiracy doctrine, a conspiracy cannot exist between an entity and its employees. *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) ("[A] conspiracy between a corporation and its agents, acting within the scope of employment, is a legal impossibility."); *Walters v. McMahen,* 795 F. Supp. 2d 350, 358 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012) ("[T]he Fourth Circuit has consistently found that the intracorporate conspiracy doctrine can be broadly applied to conspiracy cases, including civil RICO claims."). Plaintiffs are incorrect that Avance being an LLC rather than a corporation excludes the application of this doctrine. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352-53 (4th Cir. 2013) (applying the intra-corporate doctrine in the section 1985 context to an LLC). Likewise, insofar as Plaintiffs invoke exceptions to the intra-corporate immunity doctrine—"where a co-conspirator possesses a personal stake independent of his relationship to the corporation" or "the agent's acts were not authorized by the corporation," *see* ECF No. 66 at 16-17—neither applies here. *Painter's Mill Grille*, 716 F.3d at 353 (quoting *ePlus Technology Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) and citing *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985)). Here, the thrust of the complaint and proposed amended complaint are that Avance, Hererra, and Vasquez worked in concert to defraud

Plaintiffs. There are no non-conclusory allegations that Hererra or Vasquez had a personal stake independent of Avance's interests or that their actions were unauthorized by Avance.

Given Plaintiffs' prior failures to respond to Defendants' motions to dismiss, this Court granted Plaintiffs extra time, and opportunities, both to address Defendants' arguments for why the original complaint failed to state cognizable claims, and/or to explain why the proposed amended complaint "cures any deficiency and thus why amendment would not be futile." ECF No. 64 at 2. Plaintiffs have failed at both tasks and instead offer mostly conclusory arguments. Plaintiffs have failed to timely or adequately respond to the motions to dismiss and have failed to follow the Court's orders. Moreover, and especially as to the Avance Defendants, the proposed amended complaint still makes the materially same allegations as the original complaint. For these reasons, the Court concludes that dismissal of the claims against the Avance Defendants is warranted.

## C.     Plaintiffs' Motion for Leave to File an Amended Complaint and Dismissal with Prejudice

Stewart and Davis filed briefs in opposition to Plaintiffs' motion for leave to file an amended complaint. ECF Nos. 59 & 60. Therein, Stewart argues that leave should be denied due to undue delay, bad faith and dilatory motive. ECF No. 59 at 3-4. Similarly, Davis argues in his opposition brief that Plaintiffs' actions were in bad faith and unduly prejudicial to him. ECF No. 60 at 2-4. Despite Plaintiffs' assertion that their response to the motions to dismiss is also a reply to Stewart's and Davis's opposition briefs, Plaintiffs fail to address Stewart's and Davis's arguments. ECF No. 66. Davis in particular, who allotted nearly half of his opposition brief to his bad faith and prejudice

arguments, contends that Plaintiffs therefore "should be deemed to have waived arguments against these positions." ECF No. 75 at 3 (citing *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1246-1247 (D. Md. 1997)).

Additionally, in their motions to dismiss and reply briefs, all Defendants argue that amendment would be futile. Plaintiffs' only response to those arguments, as discussed above, is their conclusory contention that the proposed amended complaint fixes any deficiencies in the original complaint. The Court has found, however, that Plaintiffs have failed to adequately show how the proposed amended complaint addresses Defendants' arguments.

Although leave to amend should "be freely given when justice so requires," Fed. R. Civ. P. 15(a), a court "may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser*, 464 F.3d at 480 (quoting *Foman*, 371 U.S. at 182). In this context, "[f]utility is apparent if the proposed amended complaint fails to state a claim under" Rule 12(b)(6). *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)). Similarly, "where a plaintiff has had the opportunity to amend her complaint to cure any deficiencies, or where amendment would otherwise be futile, dismissal with prejudice is appropriate." *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 440 (D. Md. 2024).

Plaintiffs have shown a pattern of dilatoriness and undue delay by failing to timely file responses to the motions to dismiss and instead filing an untimely motion to file a surreply and then an untimely motion for leave to file an amended complaint,

neither of which addressed Defendants' arguments and both of which lacked any reasonable explanation for their dilatory behavior or any attempt to show excusable neglect other than to state that counsel forgot to file responses and was busy. *See* ECF No. 52 at 2-3.

Plaintiffs only filed a response to the motions to dismiss after the Court ordered them to do so. And as discussed above, that response was inadequate and did not, as the Court had ordered, "specify and explain why the amendment cures any deficiency and thus why amendment would not be futile." ECF No. 64 at 2. Plaintiffs' failures to rebut Defendants' arguments (and in many instances to address them at all) or show that their proposed amended complaint asserts adequate allegations shows the futility of further amendment. Finally, at a minimum, Plaintiffs have also failed to rebut the assertions that their actions were in bad faith and unduly prejudicial. As a result, the Court will deny the motion to amend the complaint and will dismiss the original complaint with prejudice having reviewed Plaintiffs' amendments and found them inadequate.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' motions to dismiss and will deny Plaintiffs' motion for leave to file an amended complaint. The dismissal will be with prejudice based primarily on the apparent futility of further amendment.


Date:  March 6, 2025                    _____/s/_____
                                        Adam B. Abelson
                                        United States District Judge